GEORGE B. HOPKINS, CHARLES MARTHINSON AND MATTIE C. COLLINS, *Appellants*, v. WILLIAM O'BRIEN, WILLIAM GIRARDEAU AND MARY GIRARDEAU, *Appellees*.

1. Under our recording laws subsequent purchasers acquiring subsequent title without notice of a prior unrecorded deed will be protected against such unrecorded conveyance unless the party claiming thereunder can show that such subsequent purchaser acquired his title with notice of such unrecorded conveyance and that the burden of showing such notice is upon the party claiming under such unrecorded conveyance; and that all of the presumptions in such a case are in favor of the bona fides of such subsequent purchaser, and that he acquired his subsequent title in good faith and without notice of the prior unrecorded conveyance, and that the burden is on the party who has neglected to record his prior title to show that the subsequent purchaser has acted in fraud of his rights by purchasing with notice of his unrecorded prior conveyance.

2. The evidence in this case does not clearly establish the right of the complainants claiming under a prior unrecorded deed to relief against a subsequent purchaser for value under an application of the rule stated in the first headnote.

This case was decided by Division B.

Appeal from the Circuit Court for Taylor County.

## STATEMENT.

George W. Hopkins of Michigan, Charles Marthinson of the District of Columbia, and Mattie C. Collins of South Carolina, on the 8th of November, 1906, filed a bill in the Circuit Court of Taylor County against William O'Brien of Minnesota and William and Mary Girardeau of Jefferson county, Florida, alleging that they were the owners by purchase of William Girardeau and Mary his wife, and a warranty deed of conveyance from them dated October 25th, 1902, of the Southeast quarter of the Northwest quarter and the Northeast quarter of the Southwest quarter, and the Northwest quarter of the Southeast quarter of Section 24, Township 2, South of Range 5 East containing 120 acres of land more or less; that soon after said purchase they went into actual possession of said property through their agent and tenant B. P. Kemp, who has continued every year to cultivate a portion thereof in crops of corn, cotton, etc.; that soon after obtaining title to said lands orators posted same by printed notices warning all persons against cutting timber on said land, nailing said notices to trees standing on said land; that said notices were given over the name of Charles Marthinson, one of the orators, and continued on said trees during the years 1903, 1904, 1905 and 1906; that they have paid the taxes on said land continuously since going into posession thereof; that in the month of July or August, 1904, one T. H. Irwin, agent for William O'Brien, went on said land and applied to orators' agent to advise him who owned said land, and that said agent Kemp advised Irwin that said property

was the property of orators, or of orator Marthinson, and that Irwin then requested orators agent to give him the postoffice address of said Charles Marthinson; that Kemp advised Irwin he Kemp was the agent and tenant of Marthinson, gave him the postoffice address of the latter and that said notices were posted on said land at that time; that Irwin was then agent of O'Brien.

The bill alleges that during the month of August or September, 1904, said Irwin applied to William Girardeau for a deed to said land, and the latter informed Irwin he had parted with the title to said land and could not sell the same; that on September 28th, 1904, Girardeau and wife executed and delivered a warranty deed convying said land to William O'Brien which orators allege on information was without adequate or sufficient consideration; that orators deed of conveyance of said land was not recorded in Taylor county until the 26th of July, 1905, and that the deed from Girardeau and wife to O'Brien was recorded in Taylor county on the 3rd of October, 1904; that O'Brien was not a bona fide purchaser for valuable consideration and without notice of said lands, but was advised and informed of your orators title to said land and took his deed with notice of orators title; that O'Brien's deed from Girardeau is a cloud on orator's title. The bill prays for the cancellation of the deed to O'Brien from Girardeau as a cloud on orators title, etc., and waives answers under oath.

William O'Brien answered the bill denying that complainants were the owners of the land in question, that he is not advised except as alleged that complainants purchased the land and same was conveyed to them by Girardeau and wife October 25th, 1902, and demands proof: denies that complainants went into possession of said land through their agent and tenant Kemp, or that Kemp went into actual possession of said lands as agent

of complainants in the months of August and September 1904; denies that the lands were posted as alleged, and denies that said notices were ever seen or read by defendants' agent, and denies that by such or any other means or in any other way defendant acquired any information of the alleged claim of ownership of the lands by complainants; denies that complainants returned or paid the taxes on said lands prior to the purchase thereof by the defendant and alleges that immediately prior to the time defendant purchased said lands the taxes were unpaid and outstanding certificates of sale for taxes were unredeemed and in possession of the Clerk of Taylor county, and that said certificates were redeemed by Girardeau prior to the purchase by defendants. The answer admits that Irwin was agent of defendants in July and August 1904, and went on portions of said lands to ascertain the amount of standing timber thereon which were in the vicinity of other lands owned by defendant; denies on information and belief that prior to the purchase of said lands by defendant Irwin advised with Kemp, or that Kemp advised or informed Irwin that Marthinson or any other person owned the lands in question; denies that Irwin asked Kemp for the postoffice address of Marthinson, or that Kemp gave him that information, or that Kemp was the agent and tenant of Marthinson, or (on information and belief) that Irwin saw or found any notices posted on said lands at the time he examined it. The answer denies that Girardeau informed Irwin when the latter applied for a deed to the said lands he Girardeau had conveyed them to other parties, and alleges Girardeau and wife conveyed said lands to defendant on September 28th, 1904, for ample consideration, *viz*, $1,200.00 paid Girardeau by defendant; that at that time tax certificates were outstanding against said lands, and Girardeau paid $75 to redeem the same before de-

fendant paid any money to him and defendant agreed to purchase said lands; that at that time defendant diligently examined the records of Taylor county, and there was not of record any deed of said lands from Girardeau and wife to complainants, or any other person, and that the records showed the title in Girardeau subject only to outstanding taxes and tax certificates; that defendant was a bona fide purchaser of said lands for value and without notice actual or constructive, or any knowledge of any rights or equities of complainant in or to said lands, and denies defendants deed is a cloud on complainants title. The answer then alleges that complainant has admitted a good title in defendant by electing to take another and different remedy and means of redress for these wrongs, and that on the      day of         , 1909, with full knowledge of·defendants deed and his rights, complainants did begin a suit in the Circuit Court of Jefferson County against William Girardeau for $1200.00 and sought to recover a judgment for the same, and that said suit was pending when the bill of complainant was filed, and that service of process had issued and had been served on Girardeau. A copy of the declaration is attached to the answer as a part thereof.

In the declaration it is alleged, among other things, that Girardeau with intent to defraud complainants conveyed the lands in dispute to O'Brien and refused and neglected to advise O'Brien that he had previously sold said lands to complainants, and that no one else so advised O'Brien, and that O'Brien was a bona fide purchaser without notice actual or constructive of the complainants rights.

William Girardeau and wife answered the bill alleging in substance, among other things, that they knew nothing of the alleged deed from them to complainants as the same is not attached as exhibit to the bill or made

a part of it; they deny that complainants returned the lands in dispute for taxation prior to September, 1904, or paid them, but allege that immediately prior to said date the taxes were unpaid, and unpaid tax certificates were outstanding and were redeemed by William Girardeau; they deny that T. H. Irwin, agent for William O'Brien, applied to them or either of them for a deed to said lands. or that they or either of them ever informed Irwin that they or either of them had parted with title to said lands and could not sell same. They admit they executed and delivered a warranty deed of these lands to William O'Brien on 28th of September, 1904, for the consideration of $1200.00, and that the deed was recorded in the public records of Taylor county on the 3rd of October, 1904, and that so far as they are informed O'Brien was on September 28th, 1904, an innocent bona fide purchaser for a valuable consideration and without notice of the alleged title of complainants.

Replications were filed to the answers and the cause referred to the master who took the testimony and evidence offered and made a report upon which final hearing was had and a final decree made on the 6th of August, 1908, that the equities claimed in the bill are not sustained, and dismissing the same at the cost of complainants. The case is here on appeal from this decree.

The evidence will be given in the opinion.

*Henry & McKinnon,* for Appellants.

*Wm. H. Baker, T. M. Puleston* and *S. D. Clarke,* for Appellees.

HOCKER, J.—Several assignments of error are based on the ruling of the Circuit Judge in either receiving or

rejecting testimony which was offered by the respective parties, and while it appears from the brief of the appellants that these assignments are insisted on, we do not think it can be said they are argued here. We will say however, that from a casual examination we do not think any of these affect the real merits of the controversy. The vital question presented by the pleadings is whether the defendant O'Brien was a "subsequent purchaser for a valuable consideration and without notice" (section 2480 General Statutes of 1906) of the lands in controversy. His deed was executed on the 28th of September, 1904, and the evidence shows that the consideration paid by him for the 120 acres of land was $1200.00. The deed of complainants to the same land and from the same grantors, Girardeau and wife, was executed on the 25th of October, 1902. It is admitted that this last deed was not recorded in Taylor county where the lands lie on the 28th day of September, 1904. The appellants undertake to establish actual notice to O'Brien of the former conveyance. On their behalf B. P. Kemp testified in substance that he had lived for ten or twelve years immediately east of the land in dispute; that by mistake he had cleared and enclosed in his field a few acres of the said land and had cultivated same since 1902 under the authority of Charles Marthinson; that he had been in possession as tenant of Marthinson *"for the salary he paid me."* The salary was $25 per annum; that he had charge of the entire tract; that he had posted the land and would go over it two or three times a year; that he posted seven notices against trespassing on the tract—four on the public road running through it; that on a Sunday in July or August, 1904, he had a conversation with one T. H. Irwin at his (the said Kemp's) house about the lands in controversy; that Irwin asked him to whom the lands lying east of his house belonged; that he told Irwin they

belonged 'to Mr. Marthinson; that Irwin asked witness who put up the notices and witness told Irwin he did it; that Irwin asked witness if he was Marthinson's agent and witness told him he was; that Irwin asked witness if he wanted to sell the land and witness answered he did not know. Then Irwin asked witness for Mr. Marthinson's address; that witness got an envelope that Marthinson had sent him, backed to witness, and handed it to Irwin and Irwin took his address; that Hunter Vann and Scott Caves were present; that he told Irwin the address was Charles Marthinson, Washington, D. C. Mr. Kemp was not able to describe the land by its numbers except that it was in Section 24, To. 2, R. 5. This witness also states that Marthinson owned 160 acres of land in Madison county a half mile north of the 120 acres in controversy, and that he put up trespass notices on this land. It appears from other evidence that Marthinson had at that time deeds of record to the southwest quarter of the northeast quarter of said section 24 which adjoined on the east the north forty of the land in controversy, and also the northeast quarter of the northeast quarter of said section, northeast of the lands in controversy. The witnesses Caves and Vann corroborate Kemp as to the conversation with Irwin, but neither of them was able to describe the land by legal subdivision. Kemp's land adjoined the land in dispute on the west and his house was about 200 yards from it.

T. H. Irwin testified in substance that he was agent for O'Brien and examined lands in Taylor county in the same section (24) Tp. 2 R. 5, for him. The lands examined were the Covington, Aman and Girardeau lands and were adjoining; that he had a list and map prepared by Mr. W. F. Calhoun, Deputy Clerk of Taylor County, which was filed in evidence. Two forties (not embracing the land in dispute) were marked "D," which indi-

cated "Dees." He went to Dees to buy these lands and was told by Dees that they were sold to Charles Marthinson. Their location has been heretofore described and the deeds conveying these two forties were recorded in the public records of Taylor county in 1903, the year before Irwin was examining the lands. Irwin admits that when he was in Kemp's neighborhood he saw him several times and was at his house, but does not remember the conversation as given by Kemp. Says he did speak to him about a sign (notice) he saw in section 25; that the first he heard of Mr. Marthinson was through Mr. Dees; that he may have written Mr. Marthinson about the two forties in section 24, but does not remember; that W. H. Baker, an attorney of Jacksonville was O'Brien's attorney and examined title and closed all deals for lands. Irwin says that he was a surveyor; that he saw Kemp several times and Kemp may have passed some remarks about the lands east of his place, but he does not remember, as when he goes out he gets a list of ownership or abstracts; that he cannot be governed by what parties tell him as such information is very misleading, as he had found out; that he never saw any trespass notices on the lands in dispute; that his chief duties were to find the corners and lines of sections and ascertain how much timber, pine and cypress, there was on the land; that Mr. O'Brien was engaged in the sawmill business.

Judge W. H. Baker of Jacksonville testified in substance that he resided in Jacksonville and was an attorney at law; that he was O'Brien's attorney and represented him in the transaction of buying the lands in controversy from Mr. W. M. Girardeau; that in the latter part of August, 1904, he went to Perry (county seat of Taylor County) with T. H. Irwin for the purpose of examining the titles in the purchase of certain lands in the neighborhood of the lands in question belonging to M.

W. Covington. Mr. Clarke, attorney for Covington, met him in Perry. After finishing the work with Mr. Clarke, Mr. Irwin gave him the numbers of the lands in controversy and asked him to examine the records to see if Mr. Girardeau was the owner. Did so and found deeds from the State to Girardeau; found no deed out of Girardeau. His examination was hurried. A short time after his return to Jacksonville Mr. Irwin requested him to get an abstract of this land and he wrote Mr. Hendry requesting one. Before receiving it, however, he saw Mr. Girardeau in Monticello and asked for a price on the lands. Mr. Girardeau said he had bought a thousand or more acres of land in Taylor county during the phosphate craze and after the collapse of the boom he paid very little attention to them and did not know what he owned and did not remember what he had sold; that he told Girardeau Mr. Calhoun, the Clerk, had told witness that there was an application for a tax deed on these lands; that he told Girardeau his client would only purchase by a warranty deed after being convinced the title was good. Mr. Girardeau said he would not give a price until he was convinced his title was good. This conversation was about the 10th of September. After his return to Jacksonville he received Mr. Hendry's statement of the result of his examination of the title, a copy of which he forwarded to Girardeau. The witness files the original abstract of title which he prepared from Mr. Hendry's report as Exhibit "D." Witness says that Mr. Girardeau stated to him there was a man whose name he recalls as Van Buskirk who knew all about the lands in Taylor county; that he would communicate with him and if Girardeau found he owned these lands he would give witness a price; that in a few days he received a letter from Girardeau saying he was convinced he owned these lands and would sell at $10.00 per acre. Witness closed

the trade, prepared a deed and sent it·to Girardeau, and Girardeau drew on him for $1,200 with deed attached through the Bank of Monticello. Witness took up the draft with his individual check on September 30th, 1904.

Mr. William Girardeau testified at length. He stated he was the grantor in both the deed to Marthinson and others, and the subsequent deed to O'Brien. As to the first deed he says that Mr. McCall came to see him, or wrote him first asking if the witness owned these lands in Taylor county and could sell them. He replied that he had never seen the lands but would sell them for full cash value; that he had not paid the taxes for sev-eral years and had virtually thrown them away; that if Mr. McCall would straighten out the taxes and would make an offer of full cash value witness would sell; that McCall offered $5.00 per acre and witness·accepted the offer; that McCall made out a deed which witness executed, but does not remember to whom the lands were conveyed, except as having seen the deed; that he subsequently sold and conveyed these lands through Judge Baker to O'Brien; that he thinks Irwin asked him in Monticello whether he owned these lands; that Irwin showed him a map of the numbers described; that he told Irwin he owned several thousand acres in Taylor county; that he would have to look the matter up to see if these lands were his;·that he heard no more of Irwin; that he subsequently met Judge Baker in Monticello, who asked whether he owned the lands and would make a price on them; that he, Baker, had been to Perry and had investigated the books there and that witness was undoubtedly the owner of these lands; that he told Judge Baker he had sold some land in that section, and before making a price he wanted to investigate; that he told Baker he would quit claim the land and named a price; that Baker told him the parties who were trying to buy the lands

would take nothing less than a warranty deed; that after some time he received from Judge Baker or Mr. Hendry giving a kind of abstract of the title made up by Hendry showing that witness owned the lands, and one or more forty was being advertised as having been sold for taxes by some one applying for a deed. On account of these circumstances and there being no deed from witness to the lands of record, he concluded he owned the lands; that he redeemed the lands from taxes and deeded the lands to O'Brien for $1200.00; but that before selling them he wrote to Mr. McCall at Madison asking him to furnish witness with the numbers he sold him; also wrote to McCall at Tampa; that the letter written to Madison was returned, and he never heard from the Tampa letter; that McCall then lived at Madison; that as he had sold to McCall for a syndicate as he supposed, he thought his deed would certainly be recorded, and that as the lands were advertised for taxes he was convinced the lands in question were not the same he had sold Mc-Call; that he did not notify either Judge Baker or Irwin he had sold the lands to Marthinson as he did not know Marthinson had any deed to them; that witness had no possible way of finding out from any numbers he had whether he had sold the lands, and wrote McCall to furnish him the numbers, and getting no reply, and getting the abstract showing he owned the lands, there was a bare possibility that he had sold the lands, but said nothing of this to Judge Baker; that he consulted two attorneys in Monticello, explained the circumstances, and they advised witness to sell; that on the first sale he received $600, and the second $1200.

This court in the case of West Coast Lumber Co. v. Griffin, 56 Fla. 878, 48 South. Rep. 36, has said: "It is well settled here that under our recording laws subsequent purchasers acquiring subsequent title without no-

tice of a prior unrecorded deed will be protected against such unrecorded conveyance unless the party claiming thereunder can show that such subsequent purchaser acquired his title with notice of such unrecorded conveyance, and that the burden of showing such notice is upon the party claiming under such unrecorded conveyance, and that all of the presumptions in such a case are in favor of the bona fides of such subsequent purchaser, and that he acquired his subsequent title in good faith and without notice of the prior unrecorded conveyance, and that the burden is on the party who has neglected to record his prior title to show that the subsequent purchaser has acted in fraud of his rights by purchasing with notice of his unrecorded prior conveyance." Citing the case of Feinberg v. Stearns, 56 Fla. 279, 47 South. Rep. 797.

In the case of Hine v. Dodd, 2 Adk. 275, notice of an unregistered prior judgment was sought to be brought home to a subsequent registered mortgagee by proving conversations the mortgagee had had with several parties, calculated to give him notice of the prior judgment. One witness, Sarah Hine, swore she heard a conversation between the mortgagee and the adverse party at a meeting held to adjust all matters of differences between them : "she swears that the plaintiff then charged Dodd with notice of the judgment prior to the execution of the mortgage and that Dodd answered it was true he knew of the judgment, but that he knew at the same time it was not registered, and what were acts of Parliament for unless they were effectually observed. Lord Chancellor Hardwicke observes: "Undoubtedly this is a material evidence, but then it is only one witness against the answer of the defendant," "it is evidence of a defendant's confession in contradiction of his answer, and contrary to a positive act of parliament made to prevent any temptation to perjury from contrarity of evidence." He fur-

ther observed: "To be sure apparent fraud, or clear and undoubted notice would be proper ground of relief, but suspicion of notice, though a strong suspicion, is not sufficient to justify the court in breaking in upon an act of parliament."

In the case of Flagg v. Mann, 2 Sumner 486, text 551, Judge Story had occasion to refer and apply the principles of the case of Hine v. Dodd, *supra*. There notice of title was undertaken to be proven by conversations with several witnesses. Judge Story says: "Indeed most of the plaintiff's witnesses on this point pretend no exactness as to times, and this leads me to some distrust of the memory of those who are more direct in their statements. In its very nature, such evidence as to times and dates is open to much question unless it stands supported by particular fixed facts, to which it may with certainty be referred. Vague reports and rumors from strangers are not a sufficient foundation on which to charge a purchaser with notice of a title in a third person." Judge Story also (p. 551) deals with the question of notoriety of ownership as notice, and says such evidence could not apply to a party not a resident of the place where the purchase occurred.

In the case of Satterfield v. Malone, 1 L. R. A. 35, it is held that fraud is not established by circumstances merely calculated to excite suspicion. That to constitute notice of an unrecorded title or adverse claim, the information must come from some one interested in the estate or from some authoritative source, and that mere rumors are not notice, nor do they impose upon a purchaser the duty of inquiry.

In the instant case notice to O'Brien of the prior unrecorded deed of complainants is attempted to be shown in several ways. First, by the fact that a few acres of the land in dispute was enclosed in the field of Kemp, the

agent of the complainants. This fact we do not regard as sufficient notice, as was held in West Coast Lumber Co. v. Griffin, *supra*. Second, by the fact that some notices were posted on the land forbidding trespassing thereon. Irwin, the agent of O'Brien denies that he ever saw any of these notices in Section 24, though he says he saw one in Section 25. It is admitted in the brief that unless he saw these notices he was not affected with notice of complainants prior deed. Third, by the conversation alleged to have taken place between Irwin and Kemp in the presence of the witnesses Caves and Vann on a Sunday in July or August, 1904, more than three years before Kemp testified as to the conversation. Irwin does not deny, but admits having conversations with Kemp, but does not remember distinctly what was said. Inasmuch, however, as neither Kemp, Caves nor Vann undertakes to describe the land about which the conversation occurred by the legal numbers, but only as East of Kemp's place, and as it appears that complainants owned other lands as shown by the records at that time east of Kemp's land, separated from it only by the land in dispute, and inasmuch as Irwin might reasonably have understood the land referred to, was the land for which he afterwards found title of record in complainants, we do not think this conversation was sufficient to put him on notice of the unrecorded deed of complainants to the land in dispute. Fourth, by the reputed ownership by complainants of the land in dispute in the neighborhood. Several witnesses testified that the land was reported in the neighborhood to belong to Marthinson. But such reputation in the neighborhood cannot be regarded as notice to strangers who did not live in that neighborhood. Flagg v. Mann, *supra*. Fifth, by information imparted to Irwin by Girardeau when the former applied to buy the land. It is shown by the testimony of Girardeau that

he did not give either Irwin or Judge Baker any notice whatever of the title of the complainants. Girardeau evidently sold and conveyed the land to O'Brien under the honest conviction, after considerable inquiry, that he had a right to sell it. We therefore do not think that the appellants have made out such a case here as would justify this court in reversing the decree of the Circuit Judge dismissing their bill. We must be satisfied that there is error in a decree before we can reverse it. Lewter v. Price, 25 Fla. 574, 6 South. Rep. 439; Waterman v. Higgins, 28 Fla. 660, 10 South. Rep. 97; West v. Daniels, 57 Fla. 548, 49 South. Rep. 154; Davis v. Horne, 57 Fla. 396, 49 South. Rep. 505; J. I. Kelley Co. v. Pollock, 57 Fla. 459, 49 South. Rep. 934.

In view of our conclusion on the question of notice, it is unnecessary to consider the question of the election of remedies.

The decree is affirmed.

TAYLOR & PARKHILL, JJ., concur:

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, JJ., concur in the opinion.