JAMES F. McPARLAND, APPELLANT, V. HERMAN A. PETERS, APPELLEE.

FILED NOVEMBER 16, 1910.  No. 16,191.

1. **Vendor and Purchaser:** UNRECORDED DEED: BONA FIDE PURCHASER: "A purchaser of real estate from one who has already sold and conveyed the same to another, whose deed is not recorded, cannot hold the land as an innocent purchaser unless he was at the time of his purchase without notice, actual or constructive, of the rights of the prior purchaser." *Dundee Realty Co. v. Leavitt, ante,* p. 711.

2. ——: ——: ——: EVIDENCE. The sufficiency of evidence to show that a purchaser of land had notice of a prior, unrecorded deed depends upon the circumstances of each case.

3. ——: ——: ——: QUIETING TITLE: EVIDENCE. In a suit to quiet title to a quarter-section of land, plaintiff is not entitled to relief as a purchaser without notice of defendant's rights under a prior, unrecorded deed, where the proofs show that at the time of the subsequent purchase defendant was using the land for grazing purposes and previously had been cutting therefrom annually about 40 acres of grass; that he had a fire-guard around the premises and a fence on the north line; that plaintiff was acquainted with the land, and, for the consideration of "one dollar and other valuables," procured personally from the common grantor who was not in possession a quitclaim deed on which he relies, after having been told by defendant that the latter owned the land.

APPEAL from the district court for Sheridan county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Albert W. Crites,* for appellant.

*Andrew M. Morrissey* and *Allen G. Fisher, contra.*

Rose, J.

The subject of controversy is a tract of land in Sheridan county, described as the southeast quarter of section 18, township 28 north, of range 46. This is a suit to quiet the title in plaintiff. The patentee is the grantor of both litigants. Plaintiff relies on a quitclaim deed executed May 26, 1904, for the expressed consideration of "one dollar and other valuables," and recorded May 28, 1904. Defendant's claim rests on a warranty deed dated December 3, 1901, and recorded August 29, 1904, the purchase price being $100. The trial court found that plaintiff was not a *bona fide* purchaser and dismissed his petition. Plaintiff has appealed.

Plaintiff relies on the recording act, and argues that the finding against him is without justification in the proofs. The controlling question raised by the pleadings and presented by the appeal is: Did plaintiff, before procuring the quitclaim deed, have notice, actual or constructive, of the rights of defendant under his prior, unrecorded, warranty deed, within the meaning of the following provisions of statute: "All deeds, mortgages, and other instruments of writing which are required to be recorded, shall take effect and be in force from and after the time of delivering the same to the register of deeds for record, and not before, as to all creditors and subsequent purchasers in good faith without notice; and all such deeds, mortgages, and other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice, whose deeds, mortgages, and other instruments, shall be first recorded; Provided, that such deeds, mortgages, or instruments shall be valid between the parties." Comp. St. 1903, ch. 73, sec. 16.

The latest statement of the rules applicable to this inquiry is as follows: "1. A purchaser of real estate from one who has already sold and conveyed the same to another, whose deed is not recorded, cannot hold the land as an innocent purchaser unless he was at the time of his

purchase without notice, actual or constructive, of the rights of the prior purchaser. 2. The burden of proof is upon the party who alleges that he purchased without notice." *Dundee Realty Co. v. Leavitt, ante,* p. 711.

Plaintiff assumed the burden of showing that he purchased the land in good faith, and on this issue testified to these facts, in substance: He had been acquainted with the land 12 years and knew its condition both before and after he bought it May 26, 1904. It was open range. Ten acres had been broken for timber culture, but had been allowed to go back to grass. This was the extent of the improvements and of the cultivation. He had no knowledge whatever of an outstanding deed in the hands of defendant, and had never been told by any one that defendant had such a deed. After his quitclaim deed had been recorded, he first learned of defendant's warranty deed. He leased the land June 24, 1904, with the understanding that the lessee would plow a fire-guard around it to pay the rent. Lessee was at the time using the land —running cattle on it. Plaintiff afterward saw a fire-guard around the premises, but did not know it was the work of the lessee.

Part of the testimony of defendant may be summarized thus: He bought the land from Luther M. Mulford, patentee, paying $100. After he heard of plaintiff's quitclaim deed, he found upon investigation that his warranty deed had been recorded in Box Butte county instead of Sheridan county, the land being near the boundary line between the two. Before plaintiff procured his quitclaim deed, defendant plowed and afterward maintained a fire-guard around the premises and also had a fence on the north line. Prior to 1904 he used the land for pasturage. He has used it for the same purpose ever since, and has also cut from it annually about 40 acres of grass. Plaintiff's lessee never plowed any fire-guard around the land, and never used it except with defendant's consent. Plaintiff visited defendant's ranch in 1902. At that time defendant bought from plaintiff another quarter-section.

They then had a conversation about the land here in controversy, and in reference to what was said defendant was asked: "State whether or not you told him at that time that you had a deed from Mulford for the southeast quarter of 18." To this he answered: "I don't know that I told him I had a deed for it. I told him we owned the southeast quarter and wanted to buy the southwest." On cross-examination defendant repeatedly said he told plaintiff he owned the land, but admitted he didn't know whether he said he owned it or the company whom he represented.

Plaintiff testified in rebuttal that he visited defendant's ranch, that he had a conversation there, and that he sold him another quarter-section. He stated, however, that defendant did not tell him he had a deed to the Mulford land, and that he did not show him such a deed. Plaintiff did not positively deny that defendant told him he owned the land. He was asked this question: "He stated that he told you that he owned this Mulford land at that time. Did he say anything of that kind to you on that occasion?" The answer was: "Not to my recollection."

It is argued by plaintiff that the proof of actual notice of the unrecorded deed was too vague, indefinite and shadowy to bind him. In this connection, testimony that defendant told plaintiff he owned the land is condemned as wholly insufficient, and the distinction between such a statement and actual notice of the unrecorded deed itself is emphasized. The sufficiency of notice depends upon the circumstances of each case. Where there is notice of a claim of absolute ownership, it is not always necessary that the documentary evidence thereof should be disclosed. Knowledge of rights existing under a warranty deed may be as effective for the purpose of actual notice as knowledge of the instrument itself. Evidence sufficient to put a prudent person on inquiry is not limited by narrow or technical distinctions between knowledge of a deed and known rights existing thereunder. Such refinement is not essential to the enforcement of recording acts intended

·to promote justice and prevent fraud, nor necessary to the protection of *bona fide* purchasers.   The holder of an un-recorded deed may resort to any competent evidence to show that a subsequent purchaser had notice of the former's ownership.   Wade in his text-book on the Law of Notice, after describing some of the sources to which a purchaser must look for knowledge, says: "Other cir-cumstances or information coming to the knowledge of the purchaser of an interest, right or claim adverse to that of his vendor are facts which put the purchaser upon inquiry.   And a party who is thus put upon inquiry, and fails to prosecute such inquiry in a proper manner, will be conclusively presumed to have obtained all the informa-tion he might have acquired by diligence, and will be charged with absolute notice of any adverse interests such inquiry would have disclosed."   Wade, Law of Notice (2d ed.)  sec. 65*a*.

In commenting on the character of evidence required to give notice to a purchaser claiming rights superior to a former purchaser from a common vendor, the supreme court of the United States, in an opinion by Chief Justice Fuller, said: "Lord Hardwicke observed in *Le Neve v. Le Neve*, Amb. 436; 3 Atk. 646; 1 Ves. Sr. 64: 'That the taking of a legal estate, after notice of a prior right, makes a person a *mala fide* purchaser;' and the notes to that case in 2 Leading Cases in Eq. 109, discuss at length the doctrine of knowledge, actual notice, express or im-plied, and'constructive notice, with abundant citation of authority.   The conclusion of the American editor is that actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstances from which a jury would be warranted in inferring notice, while constructive notice is a legal in-ference from established facts, and, like other legal pre-sumptions, does not admit of dispute."   *Simmons Creek Coal Co. v. Doran*, 142 U. S. 417, 438.

In *Oliver v. Sanborn*, 60 Mich. 346, the report shows that plaintiff claimed to be a purchaser of lands without

notice of a prior, unrecorded deed in which Isaac L. Lyon was named as grantee. James L. Sanborn had cut timber on the lands, and in testifying to a conversation with him plaintiff in that case said: "The conversation with James L. Sanborn was that he had cut some timber on these lands, and I told him I had purchased the lands. He said he understood from Mr. Smith that Mr. Lyon owned the lands. I told him that Mr. Lyon didn't own the lands—there was nothing on the records." The effect of this testimony was stated in the opinion as follows: "Here is a definite admission by plaintiff that he had received information from one claiming under the owner of the unrecorded deed that Mr. Lyon owned the land, and surely was sufficent to put a prudent man upon inquiry as to the fact of such ownership by Lyon." The sufficiency of such a statement to impart notice was taken for granted in *Harper v. Runner*, 85 Neb. 343.

Under well-recognized rules, it was proper for the trial court in determining the issue of good faith to consider the proof of plaintiff's having been told of defendant's ownership. In reading the record, no convincing reason for disbelieving the statement of that fact has been suggested. Plaintiff argues, however, that it is not sufficient, when considered alone, to show actual notice; that the land was open range; that the person using it became his lessee, and that there was no distinct and unequivocal possession by defendant to put him on guard or to charge him with constructive notice. Plaintiff testified he was acquainted with the land when he negotiated for the patentee's interest therein. The land was being used at the time for grazing purposes and for the hay it produced. For the protection of that use there was a fire-guard around the premises and a fence on the north line. Plaintiff was told that defendant owned the land. Afterward he went personally to the patentee, who was not in possession, and for the consideration of "one dollar and other valuables" procured a quitclaim deed. Though the burden was on him to show his good faith in the transaction, and

though he testified in his own behalf, there is no proof that he made any of the following inquiries of his grantor : Whose fence was on the north line? Who plowed the fireguard? Who pastured the land? Who cut the hay? Why does Peters claim to be the owner? The proofs on behalf of defendant are sufficient to show that plaintiff had been fairly put upon inquiry. Having shut his eyes to ready sources of information, he is in no position to demand protection as an innocent purchaser. When all the circumstances are considered, the trial court was justified in finding the issue in favor of defendant, and the conclusion here is the same.

AFFIRMED.