TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.

T. B. ELLIS, JR., *Appellant,* v. W. T. EVERETT *et al., Appellees.*

## Opinion Filed April 13, 1920.

1.  Where a man died in this State intestate, seized and possessed of real estate in this State, surviving him his widow and four children, the children inherited the said property subject to the dower right of the widow.

2.  Where a man died in this State intestate, in 1888, surviving him his widow and three sons and one daughter, his sole heirs at law and at the time of his death were seized and possessed of 80 acres of land in this State, but no deed was of record in the county where the land was; and in 1896 the fencing around the place all blew down and later the houses were all torn down and the place grew up in woods and commonly referred to as "wild woodland" and in 1920 two of the sons and the widow conveyed by warranty deed all the estate to another of the son's; and in 1914 the daughter conveyed her interest to the same son, and the purchasing son took possession by virtue of said deeds, fenced the whole tract with a substantial fence, cleared and cultivated, continuously, about thirty acres, continued in such possession claiming title thereto in himself, under such circumstances the purchasing son was never the tenant in common or co-parcener in possession with the other heirs and the widow.

3. Where a man died in this State, intestate, seized and possessed of 80 acres of land, to which he had a deed from the State, but not of record in the county where the land was, and left surviving a widow, and four heirs at law, and the possession of the ancestor had been abandoned and the place grew up in woodland for many years, fences blew down and never rebuilt and the houses all torn away, after which time all the heirs, but one, and the widow conveyed to the one heir, and later the remaining one heir conveyed to the purchasing heir, who took possession by fencing the whole tract, clearing and cultivating some thirty or more acres, claiming title to the whole exclusively in himself, had open, notorious and exclusive and continuous possession, but did not put either of his deeds upon record, and while in such possession, in 1916, one of the heirs and the widow who had previously conveyed to the purchasing heir, conveyed their interest to a stranger, or third party: Held, that such subsequent purchaser took his deed subject to the rights of the purchasing heir.

4. In a suit for the partition of land, where the case is referred to an examiner to take the proofs, without the power to rule upon objections to the evidence, or the objections to the introduction in evidence of deeds of conveyance, but notes the objections as made and reports the same to the chancellor, and the case comes on for a final hearing before the chancellor who, after considering the whole record, pronounces a final decree against the party who has offered the deed in evidence, and such final decree, from a consideration of the whole case is correct, the mere fact that the chancellor has marked the objection to the introduction of the deed in evidence as "sustained," even though the objections to the introduction in evidence of the deed may not have been technically well taken, such ruling, if error, was harmless.

5. While a suit for the partition of land cannot be used as a substitute for the action of ejectment, nor for the sole purpose of testing the legal title to land, yet when a suit for partition is properly brought all controversies as to the legal title between the parties will be settled by the chancellor under the statute.

6.  In a suit for the partition of land where the uncontradicted
    evidence clearly and abundantly shows that where an ances-
    tor died intestate, in this State in 1888, and at the time of his
    death he was seized and possessed of eighty acres of land, to
    which he had a deed, but not of record in the county where
    the land was, and that he left surviving him a widow and four
    children as his sole heirs at law, and the place after the death
    of the ancestor was abandoned and grew up in woods and
    all of the ancestor's improvements gone. That in the years
    1913 and 1914 the widow and three of the children conveyed
    the whole estate to the remaining one child, or heir, who im-
    mediately entered into the open, exclusive notorious and con-
    tinuous possession by virtue of the said deeds and fenced the
    whole tract, cleared and cultivated for each year after his pur-
    chase and entry, about thirty acres of the land, claiming title
    thereto in himself, paid all the taxes, but never put his deed
    on record, when in 1916, while said purchasing child was still
    in such possession, the widow and one of the heirs who had
    previously conveyed to a third person, who put his deed on
    record and then commenced a partition suit for the said lands|
    Held, that such subsequent purchaser was not a tenant in com-
    mon or co-parcener with the prior purchaser, and that at the
    time he took his deed he did so charged with the notice of the
    rights of the first purchaser, who was in possession.

An Appeal from the Circuit Court for Alachua County;
J. T. Wills, Judge.

Decree affirmed.

*Thomas W. Fielding,* for Appellant;

*Hampton & Hampton,* for Appellees.

BULLOCK, Circuit Judge.—Appellant, as complainant,
filed his bill for a partition of lands against W. T. Ever-
ett and others, and after answer and amended answer
the same was referred to an examiner who reported the

testimony, and upon final hearing the chancellor dismissed the bill, from which order this appeal is taken.

In substance the bill alleges that the complainant is the owner of an undivided two-fifths interest. It alleges that Jesse R. Everett died intestate May 12th, 1888, and at the time of his death was the owner, seized and possessed of the lands, surviving him, his widow, Marion E. Everett, and four children as his sole heirs at law. The plaintiff deraigns his title as follows: March 14th, 1916, the widow, Marion, and a son of Jesse, by name James M. Everett, conveyed to the complainant "an undivided two-fifths interest." It is then alleged the proportionate shares of the other defendants, not necessary to mention or consider.

It is perfectly apparent that if Jesse left a widow and three sons and one daughter and the widow did not waive her right of dower and take a child's part in lieu thereof, that the complainant has, inadvertently, alleged the interest conveyed to thim as two-fifths. This is immaterial and has not entered into the consideration of the case.

The defendant, appellee, filed his separate answer, admits that he is one of the heirs of Jesse, who died intestate, at the time stated, and at the time of his death was seized and possessed of the said lands and left a widow and four heirs at law surviving.

The answer continuing avers that the complainant did not receive or acquire the deed, as is alleged, on the 14th day of March, 1916, but that prior to that date that complainant acquired, by deed of conveyance from the said widow and all of the heirs of the said Jesse, all of their interest in and to the said lands and avers that "the possession of the property was delivered by the

grantors to the defendant long prior to March 14th, 1916, and on said 14th of March, 1916, and prior thereto and continuously since * * * he was in the actual, open, notorious and adverse exclusive possession, under a claim of title of all of said property, and that the deed alleged by the complainant to have been made to him was and is void."

Here we call attention to the fact that the date of complainant's deed is alleged to be the 14th of March, 1916, while the answer and the amended answer refer to the same as of date March 14th, 1914. We treat this as a clerical error in making the transcript, for a copy of the deed shows March 14th, 1916.

The amended answer avers that the complainant "was not a bona fide purchaser for value and without notice * * * and is not the owner of any part or interest in said property."

It is not necessary to refer to the other answers, as no other interest is involved.

The cause was referred to an examiner who took the proof and reported the same to the chancellor, who, after consideration thereof, rendered a final decree dismissing the bill, from which decree this appeal is taken and three assignments of error made.

It appears that on the objections made before the examiner that the chancellor passed on some of them, and the rulings have been assigned as error, and as to them we will hereafter refer.

Before taking up the assignments of error, we deem it best to consider what the proof established, as to matters of fact.

There is practically no dispute about the facts. The pleading and the proof establish these facts, to-wit: Jesse R. Everett is the common source of title; he was the patentee of the lands and lived on the lands with his family and cultivated it, or parts of it. Jesse died in 1888, intestate, and at the time of his death was seized and possessed of this property. He left surviving him a widow and four children, three sons and one daughter.

The evidence does not disclose the possession, or the disposition of the property immediately after the death of Jesse. The place was deserted and grew up in trees and all the fences were blown down at what is referred to in the testimony as the "Big Storm," which must have been some where about the year 1896; at all events a number of years ago; houses all gone and the place grown up in woods and refered to as "Open Lands." About the year 1913, defendant, W. T. Everett, took possession, fenced the whole tract, cleared and cultivated some thirty or forty acres, paid the taxes thereon, paid no rent to any one, claimed to own the whole, claiming title to the whole tract under deeds of conveyance from the widow and all of the heirs of Jesse; the possession was open, notorious and exclusive and continuous to the time of the bringing of this suit. Appellant concedes that at the time he obtained his deed that the defendant, W. T. Everett, was in the possession of the land.

Complainant offered in evidence two deeds from the State of Florida to the said Jesse, one dated in 1885 and the other in 1886, which embrace the land in dispute. We call attention to the fact that neither of these deeds was on record in Alachua County.

Complainant offered in evidence the original deed from "Marion E. Everett, widow," and Jesse M. Everett and

his wife, for what the deed terms "our 2-5 undivided interest," in the lands, the deed reciting that "Marion E. Everett being the widow of Jesse C. Everett, deceased, and the said James M. Everett being one of the four children of the said Jesse C. Everett, deceased." The proof shows that "Jesse C. Everett" was intended as "Jesse R. Everett.

To the introduction of this last mentioned deed the defendant objected and as it is the ruling on these objections that constitute the main contention in this case, we deem it best to set out the ground of objection. The deed was objected to, first, because it appears from the pleadings in this case, at the time and date of the execution of this deed, that the defendant, W. T. Everett, was in the open, hostile and adverse possession of the property recited in the deed, having the same inclosed and claiming the same exclusively, as the sole owner thereof, and the deed is therefore void and conveys no title.

Second, because Marion E. Everett, the widow of Jesse C. Everett, had no interest, right or title to this property.

Third, if the widow had any interest, such interest was only a dower, and the record and the pleadings showing that she is deceased, and all rights ceased at her death.

Fourth, because Marion E. Everett, J. L. Everett and James M. Everett conveyed their interest in this property as shown by the answer in this case, to the defendant, W. T. Everett, on March 1st, 1910; and neither of said grantors had, owned or held any interest in the said property at the time of the attempted conveyance to the said T. B. Ellis, Jr.

The chancellor sustained these objections and this rul-ing constitutes the second assignment of error.

The appelle introduced several deeds, two of which had already been introduced, being deeds from the State of Florida to the common ancestor, Jesse R. Everett. He then introduced two deeds, the first one being a deed from M. E. Everett, James M. Everett, A. A. Everett, A. S. Turner, T. J. Turner, J. L. Everett and Ruth Everett, to the appellee, W. T. Everett. This deeds bears date March 1st, 1910.

In the body of the deed the grantors style themselves "The legal heirs of Jesse R. Everett, deceased."

Appelle introduced another deed, one from A. J. Tur-ner and his wife, Ada, to W. T. Everett, which deed bears date February 3rd, 1914. The grantors in this deed recite that they convey "their undivided interest, only, as heirs of Jesse R. Everett, deceased." Neither of these deeds were of record at the time the bill was filed. To the in-troduction of this last deed the complainant objected and the grounds of objection are practically the same as those mentioned to the other deed. Some of these objec-tions refer to wholly different deeds, that is deeds, if any such, not shown in this record. Many of the objections are really restated and subdivided.

The chancellor overruled the objections to these two deeds being filed in evidence, which constitutes the first assignment of error. We have carefully considered the several objections and do not discover any reversible er-ror in overruling the complainant's objections to these two deeds being offered in evidence.

The second assignment of error has reference to the in-troduction in evidence, or in refusing to allow complain-

ant's deed from the widow and James, one of the sons of Jesse, to be filed in evidence. If error, it was harmless in view of the conclusions reached by the chancellor. When this deed was offered in evidence, the objections urged, possibly, were not apt, so far as the *introduction in evidence;* but the usual practice in cases before a chancellor, and no doubt followed here, when a case is referred to an examiner and he reports the testimony, the examiner merely notes the objections and when the matter is finally disposed of by the chancellor, he considers all the competent testimony and renders his judgment from a consideration of the whole case, and parties who desire to insist on the objections taken before the examiner, call them up for a ruling before the chancellor and he notes his ruling thereon. Evidently, considering all the evidence in the case, the chancellor found that the complainant had not maintained his bill and rendered a final decree of dismissal. In other words, after considering the whole case, he found that the complainant's deed was not superior to that of the defendant's. If his conclusions on the whole were correct, then no harm has resulted, even if we concede there was technical error in the sustaining of the objection to complainant's deed being filed in evidence.

The third assignment of error is that the "Honorable Circuit Judge erred in decreeing the equities to be with the defendant."

The answer avers that the complainant was not a bona fide purchaser for value and without notice. Complainant has not testified on this point, nor any other witness. We take it that the complainant has planted his claim of title solely on the statute governing the record of conveyances. As to the matter of possession as a

means of giving notice, complainant contends that the possession of appellee was that of a tenant in common, or coparcener with him. Whether the appellee is in possession as a tenant in common or coparcener is a vital matter. The authorities cited on the point by the complainant may be sound where the facts justify it.

Complainant asserts that the defendant in his answer admits that he is "owning and claiming as an heir of Jesse" and that he thereby admits his possession is as an heir of Jesse, and as he is a purchaser from another heir of Jesse, therefore the defendant's possession is his possession. There is no foundation for this contention. The answer does say he is in possession as an heir, and he was one of the heirs, but it goes on and says he has a "deed made by all the heirs of Jesse," and this is his justification for the possession.

Complainant cites the case of Tyler v. Johnson, 61 Fla. 730, 55 South. Rep. 870. This is in line with the other decisions of this court holding that "Actual possession of the land affords notice that such possession is presumably pursuant to some right, and, if the right is not shown by the duly recorded title, the possession may be regarded as notice of any right claimed by one in possession. Such possession puts the purchaser upon inquiry." In the case of Tate v. Pensacola, Gulf, Land & Development Co., 37 Fla. 439, 20 South. Rep. 542, this court said: "Actual possession of land is notice to all the world of whatever rights the occupant really has in the premises, and a vendor cannot convey to any other person without such person being affected with such notice. Actual knowledge of such possession on the part of those sought to be charged with such notice is not necessary. Notice in such a case is a legal deduction from the fact of posses-

sion." The facts in this case are clearly distinguishable from those in the case of Tyler v. Johnson, *supra*.

Complainant alleges that he is the owner of an undivided two-fifths interest, stating how he derived his title, by purchase, from one of the heirs of Jesse, and that defendant was an heir and that they were tenants in common or coparceners. The answer denies that he is an owner of a two-fifths interest, or that he owns any interest whatever, explaining that the grantors of the complainant had, long before the date of the deed to the complainant, conveyed to the defendant, his interest, as an heir of Jesse, in said lands, and that other heirs had done the same thing, and pursuant to this deed that defendant had entered into the open, notorious, exclusive, adverse and continuous possession and was still in possession and at the time the complainant received his deed he was in possession, claiming title exclusively in himself, founded upon the written instrument he mentioned, and that the complainant was not a bona fide purchaser for value and without notice. This answer measures up to the terms of answers in such case, as noted by this court in the case of Gracy v. Fielding, 71 Fla. 1, 70 South. Rep. 625, cited by appellant.

The burden of proof is upon the party who claims by virtue of priority of record, against a prior but unrecorded deed, to show affirmatively the payment of a valuable consideration and such proof must be made by some other evidence than a mere recitation of it in a deed. Lake v. Hancock, 38 Fla. 53, 20 South. Rep. 811.

It is noted that while the complainant has been charged as not being a bona fide purchaser, that he has not testified as to that point, nor as to the payment of any consideration, nor has his grantor testified on that point.

One setting up the claim of a good faith purchaser as against an unrecorded deed has the burden of showing that he purchased without notice of such deed. Mc-Farland v. Peters, 87 Neb. 829, 128 N. W. 523, cited in Balard's Real Property, 787, and cases cited; Lake v. Hancock, *supra,* and the cases there cited.

In Tyler v. Johnson, *supra,* this court has held: "Where possession is taken under a deed of conveyance, the possession is presumed to be in accordance with the rights conveyed, and the possession continues under such rights unless a different right is given by law, or is asserted expressly, or by implication from the actions or conduct of the party in possession, or of some one acting in his behalf." Speaking of possession by a tenant in common, this court has said: "Where title to property has descended to several as coparceners, the grantee and the other copartners become tenants in common of the land, and the possession of the grantee under such a conveyance is notice only as to the interest conveyed, unless actual notice is given that the possession has reference to other rights, as well as those conveyed." In that case the father and the children inherted the property as coparceners, and were in possession and the father as guardian of the children, sold the interest of the children, but not his own, gave a deed, and this deed was put upon record, and possession given to the purchaser, which possession "is presumed to be in accordance with the rights conveyed." The prior possession with the other coparceners, the father, continued and was liable to execution.

When the facts in each case are considered, there is no conflict in the cases of Lake v. Hancock, *supra,* and Massey v. Hubbard and those of Gracy v. Fielding, *supra;*

Tyler v. Johnson, *supra;* West Coast Lumber Co. v. Griffin, 56 Fla. 878, 48 South. Rep. 36, and Hopkins v. O'Brien, 57 Fla. 444, 49 South. Rep. 936.

No beneficial purpose can be served in an extended recitation of the facts in the various cases cited, showing the character of the possession in each case. A brief reference to some of them will suffice. In the case of Fienberg v. Stearns, 56 Fla. 279, 47 South. Rep. 797, the purchaser with the unrecorded deed never went into actual occupancy, but allowed tenants who were in possession under his grantor, Mitchell, to continue in possession so that his grantor, Mitchell, "so far as the public records showed," was the owner of the lots In Hopkins v. O'Brien, *supra,* the notice relied upon was that, Kemp, who owned adjoining lands "by mistake, had cleared and enclosed in his field a few acres" of the land of Mathinson, a claimant under the unrecorded deed. In his testimony, Kemp, the would-be tenant, said he had been in possession for Mathinson "for the salary he paid me. In West Coast Lumber Co. v. Griffin, 54 Fla. 621, 45 South. Rep. 514, there was a tract of 360 acres of "wild and unoccupied woodland, unenclosed and unimproved. About four and one-half acres of it enclosed by the fence of an adjacent owner whose enclosure ran across the division line at one point," and the court said this was "the only semblance of possession." This could not be said to be a "recognized way of giving notice."

In those cases where there is a conflict between a prior purchaser who has not recorded his deed, and a subsequent *bona fide* purchaser for value and without notice of a prior unrecorded deed where such subsequent purchaser will be protected against such unrecorded deed, unless the party claiming under the prior unre-

corded deed can show that the subsequent purchaser had notice of such unrecorded deed, and the burden is on the party claiming under the prior unrecorded deed to prove notice, is approved, but such expressions must have reference to the facts in each case and considered with reference to those facts. Record notice is constructive notice, while open, exclusive, notorious, continuous and adverse possession by a substantial enclosure and cultivation is actual notice of which all parties must be bound in dealing with such property.

Appellant has cited many decisions and text writers to the effect that the possession of one coparcener is the possession of all the coparceners, which is the well established law in this State, but no application in the instant case. There is not the slightest suggestion from the evidence that the appellee, at any time, was in the possession of the premises as a cotenant of the grantor of the appellant. Appellee's interest, as an heir, vested in him at the same time and by the same means as that of the grantor of the appellant, over a quarter of a century before appellant took his deed, and appellee's possession was by purchase from the other heirs, he being also an heir, all from the common source of title.

Viewed from the standpoint of reasonable, ordinary business transactions, where there was nothing on the record in the county where the land was situated, to indicate that the title ever vested in the common ancestor, Jesse R. Everett, and nothing in this record to show that there ever was any administration on the estate of Jesse, where a record of his heirs would be made, and a person is found in the possession of the whole by a substantial enclosure and thirty or forty acres in cultivation, would lead an ordinarily prudent man to make some inquiry

before paying a valuable consideration for the property. We again call attention to the fact that neither the grantor, an heir of Jesse and within the jurisdiction of the court, nor the grantee, who was a witness, gave any testimony on this point. Under the circumstances disclose in this case, how could the appellee prove notice of his rights, other than he did by his possession and claim of title?

The chancellor was called upon to pass upon the question of who had the superior title, and while it is well recognized in this State that partition cannot be used as a substitute for ejectment, yet; when the suit for a partition is properly brought, all controversies between the parties as to the legal title will be settled by the chancellor, under the statute.

The bill of complaint asserted title to a proportionate interest in the property and the answer denied that complainant had any title and set up title in himself and the chancellor has heard the testimony and decided that the complainant did not have the title claimed and dismissed the bill and as we do not find any reversible error, the decree of dismissal should be affirmed.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the court that the decree herein be, and the same is hereby, affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.