THOMAS, Justice
(dissenting).
It is important at the outset to record a chronology of the events relevant to this dispute.
On 18 August 1951 three persons, including Harry M. Lorbach, purchased a tract of land and ten months afterward subdivided it and placed the lots on the market. One of the lots was purchased by the appellants-Duane who received their deed 6 February 1953 and these grantees claim they took possession of the lot 1 April 1953. Appellee-Staley, on 9 July 1953, secured a final judgment against Harry M. Lorbach in the circuit court of Dade County and a certified copy of the judgment was filed in the office of the Clerk of the Circuit Court of Orange County 21 July 1953. On 6 October 1953 appellants-Duane filed their deed for record and on the same day executed and delivered to First Federal Savings and Loan Association of Orlando a mortgage on the property to secure a loan of $16,000.
This litigation was precipitated by the attempt of appellee-and judgment creditor-Staley on or about 3 August 1954 to have appellee-Starr, sheriff of the county, levy execution upon Lorbach’s undivided one-third interest in the lot to satisfy the judgment.
It was alleged in the complaint that appellants-Duane maintained open and visible possession of the property in question continuously after 1 April 1953. It was alleged, too, that this possession consisted of the erection of a tool shed upon which was displayed the name “Duane Construction Company,” or a similar one, and that Dale Duane with the consent of his wife, used the shed to store construction equipment. Such was averred to have been the use of the property at the time the judgment became a lien and at the time of the execution of the mortgage. The Duanes used the money obtained from thé loan ’association and some money of their own to construct a dwelling and to beautify the property.
The appellants asked the court to enjoin the sale of the property under the execution and to decree that the title of the own-., ers and the lien of the loan association were superior to the lien of the judgment creditor. They asked also that in the event the court should hold the judgment lien superior to the title and the mortgage they be declared the holdér of a lien, superior to the judgment, in the amount of the improvements placed on the property after the judgment was recorded. Finally they prayed that other assets of the judgment debtor be marshaled and sold to satisfy the debt, and that the sale of the property now involved be meanwhile restrained.
The general master to whom the chancellor referred the case recommended that a decree be entered declaring that the appellants-Duane were in “exclusive, actual, open visible possession of the lot” at the time the judgment was recorded and that the judgment constituted no lien affecting the title of the appellants-Duane or the lien of the loan association.
When the matter reached the chancellor on exceptions to the master’s report he disagreed and dismissed the bill. He thought *76 the so-called acts of possession were not of such character as to put the appellee-Staley on “notice that the judgment debtor might have conveyed and that Duane was the owner.” The “sign and the little shed, saw horses, batten hoards,” and so on, he thought were notice only that a construction company was using the property. He commented that for aught that could be deduced from the physical appearance of these objects the construction company was preparing to erect a building “for the judgment debtor and his tenants in common.” He found no basis for an equitable lien and he concluded that no notice of the existence of a partnership was given simply because the original deed contained the names of three grantees.
In presenting their first question the appellants through their attorneys tell us that there is no real dispute about the nature of the possession prior to the filing of the judgment. They then advise us that appellant Dale Duane was engaged in the business of constructing houses. Certainly the sign, the tool shed' and the equipment placed on the lot would indicate to an observer not only that that was his business but that the property was being used for such a business or, as the chancellor observed, for the construction by him of a building on the property or on property nearby for someone else, perhaps the judgment debtor and his tenants in common. It would require considerable imagination to gather from the physical appearance of the lot and the equipment upon it that a man was possessing it for the use of himself and his wife.
Whether or not apparent occupancy is sufficient to give notice that someone other than the record title owner has such an interest that he must be reckoned with, despite the notice given by the record, depends on the very nature of the occupancy. So the planting of land to orange trees, as was the case in Florida Land Holding Corporation v. McMillen, 135 Fla. 431, 186 So. 188, or fencing the property as in Scott v. Simmons, 151 Fla. 628, 10 So.2d 122, or fencing, clearing and cultivating as in Ellis v. Everett, 79 Fla. 493, 84 So. 617, justified the decisons that an observer should immediately be put upon notice regardless of information to be got from the record. And although aver-ments of open, actual, visible, exclusive possession, and similar language, would be descriptive of the facts in the cited cases and of this one, it does not follow that the facts shown here would require a like decision. A passerby viewing this lot, situated as it was in a residential district, would have likely come to the logical deduction that occupancy was by Duane, builder, rather than Duane and wife, owners.
In presenting their second point, relative to. the plea for a lien to secure the amount expended by them in the improvement of the property the appellants-Duane admit that the “judgment lien constituted legal notice [to them] at all times” but they claim they acted in good faith and should, therefore, be awarded an equitable lien for the cost of the improvements. This position is based on the general principle, as they state it, that when one in good faith places improvements on property not his own he should be protected by a court of equity. It cannot be said -that these appellants innocently and in good faith spent their money improving the property of another. They expended their funds improving their , own property and their dilemma arises from their carelessness in withholding from record the deed to them, until the lien of the judgment was fastened upon their lot. We have not discovered in this record the basis for an equitable lien.
Having concluded that the possession described by the witnesses did not amount to notice, there remains simply a question of priority of the judgment lien against an undivided one-third interest and a mortgage upon the whole property, and in our opinion the former is superior. Sec. 695.-01, Florida Statutes 1953, and F.S.A.
The last question posed by the appellants relates to 'the partnership status of the *77 property they claim the deed to the sub-dividers, their grantors, created. They contend that the chancellor erred when he failed to find that the land, when title to it was placed in the names of their grantors, constituted partnership property and that a judgment against one partner, or grantee, became a lien only against the judgment debtor’s “equity in said partnership and not against any particular asset of such partnership.” In other words, it is insisted that the land belonged to the partnership consisting of the three grantees to whom it was conveyed and that the assets of a partnership cannot be reached by levy of an execution based on a judgment against one partner inasmuch as the assets are vested in the partnership entity and the interest of each partner is only his proportionate share of the assets remaining after all debts of the partnership are paid.
This position seems to be based on the premise that the deed to the three persons was itself a notice that the three were partners.
In the brief it is stated that there is no conflict whatsoever in the testimony that when the property was conveyed to appellants-Duane’s grantors, it was acquired as partnership property. The chancellor found that appellants had “wholly failed to make out a case on the partnership theory”; that the grantees appeared in the instrument as individuals; and that there was no evidence that the deed put third parties on notice that the land thereupon became partnership property as distinguished from tenancy in common.
I heartily agree with the chancellor that the record was bare of any information that the grantees were to be considered by a reader as partnership owners of the property conveyed.
A careful study of the record brings me to a conclusion coinciding with the chancellor’s, so I dissent from the decision which a majority of the Court has reached.
TERRELL, C. J., and ALLEN, District Judge, concur.