## GILLISON MAGHEE

*v.*

## JO ROBINSON *et al.*

*Filed at Mt. Vernon May 11, 1881.*

1. NOTICE *of an equitable title to land—by possession.* The actual possession of land by a person holding an equitable title to the same, will operate as notice of his equitable rights as against a subsequent purchaser at a judicial or other sale.

2. PURCHASER OF EQUITABLE TITLE—*holds subject to infirmities—of the application of the Recording act.* A party taking an equitable title to land, to enforce which he must resort to a court of chancery, takes it subject to all infirmities existing against it, and can claim nothing under it which the former owner could not have claimed. The purchase of an equity gives the purchaser the estate which he buys, in the condition in which it was when bought.

3. A purchaser of what were known as "swamp lands," from a county, received the usual certificates of purchase therefor, and assigned the same to another, for a valuable consideration. Subsequent to such assignment, but before the recording of the same, judgments were recovered against the original purchaser of the lands, and executions which were issued upon those judgments were levied upon the lands, and they were sold. There having been no redemption, the officer executed deeds to the purchaser. It was *held,* no estate whatever, either legal or equitable, passed by the execution sale. The judgment debtor never held any other than a mere equitable title to the lands, and, at the time of the recovery of the judgments against him, did not have even that interest. It was not essential to the protection of the interests of the assignee of the certificates of purchase, as against the judgment creditor of his assignor, or the purchaser under the execution sale, that the assignment should have been recorded. The apparent equity of the judgment debtor in the lands, was taken, if it was taken at all, subject to the actually existing rights of the assignee, without regard to the question of notice of the existence of those rights.

4. PRIOR SUIT PENDING—*effect upon the right to have the same matter considered in a subsequent suit.* In a suit in chancery instituted by a purchaser of lands at an execution sale thereof, it was sought to set aside a transfer of the equitable title of the judgment debtor in the lands, upon the alleged ground that it was made with intent to defraud creditors. The defendant—the assignee of the equitable title of the judgment debtor—filed his cross-bill, setting up that the vendor of the judgment debtor had obtained a decree under which the lands in controversy had been sold to satisfy an unpaid portion of

the purchase money, and that the complainant in the cross-bill had filed his bill in chancery in the circuit court in the county in which the lands were situate, by which he sought to redeem from the sale under that decree, and to enjoin the master from executing a deed for the lands. The complainant in the original bill thereupon, by amendment, set up substantially the same facts, but alleged that the purchaser at the sale under the decree had assigned to him the certificate of purchase, whereby he was himself entitled to a conveyance. Upon a final hearing in the court below, both the original and cross-bills were dismissed. The complainant in the cross-bill contended that the portion of his cross-bill seeking redemption should have been retained, and the relief granted,—but, by reason of the prior institution of the suit involving the same subject matter, and seeking the same relief as that sought by this cross-bill, and that such suit was still depending in the court which first acquired jurisdiction, it was *held,* that the rights of the parties litigant in respect to the matter of such redemption would not be considered as involved in the suit in which the cross-bill had been filed.

APPEAL from the Circuit Court of Perry county.

This suit was originally instituted in the circuit court of Saline county, and subsequently removed, on change of venue, to Perry county.

Mr. GREEN B. RAUM, for the appellant:

The judgments rendered in the United States Circuit Court in favor of Maghee & Co. became liens upon the interest of Robinson in the lands in controversy. Rev. Stat. 1845, p. 300, sec. 1; *United States* v. *Duncan,* 12 Ill. 523; *Jones* v. *Guthrie,* 23 id. 425.

Equitable estates are subject to judgment liens. Scates' Comp. 602; *Niantic Bank* v. *Dennis,* 37 Ill. 381.

A judgment is a lien upon land held under a certificate of entry or purchase from the United States, and such lien is not affected by a subsequent transfer of the certificate by the defendant. *Rogers* v. *Brent,* 5 Gilm. 573.

The assignments of the certificates of purchase by Robinson to Groves were such instruments as were required to be recorded. Rev. Stat. 1845, p. 108.

Whatever a party has acquired as an innocent creditor without notice, he has a right to perfect and secure to him-

self, notwithstanding a subsequent notice. *Martin* v. *Dryden et al.* 1 Gilm. 218; *McClure* v. *Iglehart,* 17 id. 49; *Reichert et al.* v. *McClure,* 23 id. 518.

Proof of notice of an unrecorded deed must be made in the same manner, and its measure must be the same, as that which establishes a fact in any other case. *Doyle* v. *Teas,* 4 Scam. 250; *McDonald* v. *Read,* id. 123; *Rupert* v. *Mark,* 15 Ill. 541; *Merrick* v. *Wallace,* 19 id. 486; *Morrison* v. *Kelly,* 22 id. 628; *Clark* v. *Morris,* id. 434; *Rogers* v. *Brent,* 5 Gilm. 573.

Possession under an unrecorded deed, to be notice to subsequent *bona fide* purchasers, must be open, visible, and exclusive, and must apprise the community that the occupant under the unrecorded deed has appropriated the property to his exclusive use. *Truesdale* v. *Ford,* 37 Ill. 210; *Reeves* v. *Ayers,* 38 id. 418; *Walden* v. *Gridley,* 36 id. 523.

Mr. JAMES M. GREGG, for the appellees:

A person purchasing an equitable estate at sheriff's sale is not protected by the disclosures of the record, as in case of a legal estate. Such purchaser takes the equitable estate subject to all imperfections existing against it, and can claim nothing which the judgment debtor could not have claimed. *Sumner et al.* v. *Waugh et al.* 56 Ill. 539; *Porter* v. *Darst,* 31 id. 212.

The purchaser of an equitable title at a sheriff's sale must show that the judgment debtor had such equity as he could have himself enforced. *Hatch et al.* v. *Wagner,* 15 Ill. 127.

When a plaintiff in execution purchases an equity at sheriff's sale, he takes subject to an unrecorded deed. *Swazy* v. *Burk,* 12 Peters, 11; *Freeman* v. *McBane,* 2 Johns. Ch. Rep.

Appellee Groves is entitled to redeem as grantee or assignee of Robinson and Robinson and Hundly, and not being a party to the suit to foreclose, such redemption can lawfully be made at any time before a remedy by bill to quiet title is barred by

limitation. *Hodgen* v. *Guttery,* 58 Ill. 433; *Gardner et al.* v. *Emerson et al.* 40 id. 296; *Dunlap* v. *Wilson et al.* 32 id. 517; Rev. Stat. 1874, chap. 77, sec. 18.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The original bill in this case was exhibited by Gillison Maghee, in the circuit court of Saline county, at the April term, 1864, against Jo Robinson, George B. Groves, and other persons, some of whom had no personal interest in the subject of litigation, but who, by reason of their official positions, were necessary parties. It is set forth in the bill, the firm of J. H. Maghee & Co., of which firm complainant was a member, at the January term, 1859, of the Circuit Court of the United States for the Southern District of Illinois, recovered a judgment against Jo Robinson and others for the sum of $5917.53, and at the June term, 1859, of that court, they recovered another judgment against Robinson and others for the sum of $2153.25. It is alleged, these judgments became a lien on the lands of Robinson and the other defendants, and that, by virtue of executions issued on such judgments, the lands involved in this litigation were sold by the marshal as the property of Robinson, and were purchased by complainant. The lands so sold were not redeemed from such sale, and afterwards the marshal executed and delivered to complainant, deeds for these lands, purporting to convey to him the interest Robinson had in such lands. It is also set forth, the lands were originally swamp lands, belonging to the county of Saline; that Robinson bought of the county the lands particularly described in an exhibit attached to the bill, and received from the commissioner making the sale on behalf of the county, the usual certificate of purchase, which would entitle him to a deed on payment of the balance of the purchase money, and in like manner that Robinson and R. M. Hundly bought of the county the

lands described in another exhibit, each party having an undivided one-half interest in such lands.

It is charged, that at the time of the rendering of such judgments Robinson was the sole owner of the lands bought by him, and was the owner of an undivided one-half interest in the lands so purchased in connection with Hundly. In 1862 the duplicate certificates of purchase issued to Robinson and to Robinson and Hundly for these lands, were filed in the office of the circuit clerk of Saline county, having assignments thereon from Robinson to George B. Groves, which assignments purported to convey all the interest Robinson had in the lands embraced in the certificates issued to him as well as in those embraced in the certificates issued to him and Hundly, and to authorize the proper officers to execute and deliver to the assignee deeds for the same. It is further alleged, application had been made on behalf of Groves to the county clerk of Saline county for the execution of deeds on such certificates.

The bill contains an allegation that the assignments of the certificates of purchase were not made on the day of the date they purport to have been made, but were made subsequent to the rendering of such judgments, with the fraudulent intent to defraud the firm of Maghee & Co. out of their debt. Complainant explicitly charges he had no notice of the assignment of such certificates of purchase by Robinson to Groves, until the same were filed for record in the proper office. Other matters of minor importance are set forth in the bill, but it will not be necessary to state them to an understanding of the legal questions discussed. Complainant, by his bill, submits four propositions for the consideration of the court, as follows:

*First*—Whether it would be lawful for said county clerk to execute deeds to said George B. Groves upon the duplicate certificates, as aforesaid.

*Second*—Whether, in view of the facts, it would be equitable and just, even if lawful, for said Groves to have deeds executed to him.

*Third*—Whether complainant is entitled to the execution of deeds by the county clerk, conveying such lands as complainant has purchased, as aforesaid, which said Robinson had bought from the county, and to which deeds have not already been made.

*Fourth*—Whether complainant is entitled to the possession of the deeds on file in the county clerk's office, as aforesaid, that they may be recorded in the recorder's office of Saline county.

An injunction was asked, to restrain the county clerk from making or executing deeds to Groves, or any other person, to the lands to which complainant claims title. The bill contains the usual allegation as to combination and confederation between defendants to wrong and injure complainant, and concludes with a prayer that on the final hearing the court will order and decree that the county clerk should correct any mistakes that may have occurred in deeds, and that such clerk make deeds either to Robinson or complainant, as the court may think best, and that upon the making of such deeds they be delivered to complainant, and that the deeds already made to Robinson be delivered to complainant; that the deeds to Robinson and Hundly, in which complainant claims to be interested, shall be filed in the circuit clerk's office of Saline county for record; that defendant Groves be required to deliver to complainant, or to such county clerk, the certificates so assigned to him, containing the lands to which complainant lays claim, or that Groves be forever enjoined from setting up any claim by virtue of such assignment of certificates, against complainant.

The answers of Robinson and Groves were not under oath, and while they contain general denials of all the principal allegations of the bill, they contain also some affirmative statements it will be necessary to state, as it is upon them the issues were formed, and which are material to the decision of the case,—among the most important of which is the allegation that Groves was the equitable owner of these

lands, subject, only, to the payment of the balance of the purchase money, and that he had, prior to the date of the recovery of the judgments of Maghee & Co. against Robinson, purchased the interest of Robinson in them, and that he was in the actual possession, by himself, or other persons for him, of some of the lands—the residue of such lands being vacant and unoccupied. There is also a distinct affirmation the assignments of the certificates of purchase by Robinson to Groves were not made subsequent to the date of the judgments in favor of complainant against Robinson, or at any other time than the date of such assignments as appears on the certificates.

On the third day of May, 1869, George B. Groves filed a cross-bill, making complainant in the original bill a defendant, in which he set forth, substantially, the proceedings had on the original bill. Among other things, complainant in the cross-bill alleged suits were commenced by the drainage commissioner to collect the balance of the purchase money due from Robinson, and from Robinson and Hundly, on a large portion of the lands described in the exhibits to the original bill; that under a decree obtained, the lands were sold to John W. Mitchell, and that before the time for redemption expired, complainant in the cross-bill offered to redeem the lands from such sale, but the officer that had made the sale refused to permit him to do so. And thereupon he filed his bill in the circuit court of Saline county, praying, among other things, for a writ of injunction restraining the commissioner from making a deed for the lands to Mitchell, and for a decree to enable him, as assignee of Robinson, to redeem the same. Complainant in the original bill, among others, was made defendant to that bill. An amendment to the bill shows that Mitchell, before the time of redemption expired, had sold and transferred his certificates of purchase to complainant in the original bill in this case, whereby he became vested with all the rights Mitchell had in them. Complainant, in an amendment to his original bill, states the same

facts, substantially, and insists that by means of his purchase of such certificates he became possessed of the outstanding lien in favor of the drainage-commissioner, and as such lands had never been redeemed according to law, he was entitled to a deed therefor.

A number of amendments were made, both to the original and cross-bills, in some instances making new parties having only a nominal interest, and in others introducing new matters, but the case made by either bill was not materially changed by such amendments, and to which answers were filed, and on filing replications by the respective parties issues were made up, on which, together with the testimony taken, the cause was submitted. The court dismissed both the original and cross-bills. Complainant in the original bill brings the case to this court.

Although this record is very voluminous and much complicated, our views on the questions discussed may be briefly stated. Without discussion, it may be assumed, that whatever interest Robinson had, if he had any, in the lands purchased by himself, or in connection with Hundly, of the county of Saline, was subject to the judgments which complainant obtained against Robinson and others in the United States Circuit Court. The question of controlling importance is, whether he had any interest, either equitable or legal, at the time. It is quite conclusively proved, that prior to the dates such judgments were obtained, in January and June, 1859, Robinson had assigned all the interest he had in the certificates of purchase which he held for the lands, to Groves, and had assigned and delivered the same to him, although such certificates, with the assignments, were not recorded until in 1862. There is direct and positive evidence of that fact in the record, and nothing that seriously militates against it. Nor is there anything that impeaches the fairness of the transaction.

As to that portion of the lands of which Groves had possession anterior to the judgments, it is plain such possession

was notice of his interest in the lands, and his equitable rights would prevail over a subsequent purchaser at a judicial or other sale. The greatest difficulty arises as to the lands of which he had no actual possession. It is not claimed that Robinson ever had the legal title to these lands, and assuming it to be proven, as must be done, that he had assigned the certificates of purchase to Groves prior to the date of complainant's judgments against him, he had then no equitable title to these lands. The position taken is, that inasmuch as the assignments of the certificates to Groves were not made a matter of record until long after the judgments were obtained, and complainant had no actual notice of such assignments, the equitable title Robinson acquired to the lands by his original purchase was subject to the liens of the judgments, and any title that might be acquired under execution sale would relate back to the time such liens attached. Such is not the law. The question involved has been the subject of discussion in at least two cases in this court. In *Fortier* v. *Darst*, 31 Ill. 212, it was held a party taking an equitable title, to enforce which he must resort to a court of chancery, takes it subject to all infirmities existing against it, and can claim nothing under it which the former owner could not claim. At the date of complainant's judgments, Robinson, in fact, had no interest whatever in these lands. The interest he had, whatever it was, had previously passed to Groves, by assignment. It is said, equity deals with the purchaser of an equitable title as the law deals with the purchaser of a legal title, and regards the purchase as incapable either of defeating rights or creating them. "The true principle," as was said by this court in *Sumner* v. *Waugh*, 56 Ill. 531, "is, that the purchase of an equity gives the purchaser the estate which he buys, in the condition in which it is when bought." Recognizing the cases cited as accurate expressions of the law on this subject, they are conclusive of this branch of the case. And as the judgment debtor had, in fact, no interest at the time complainant

bought at the execution sale, he obtained no interest in the lands.

Defendant Groves insists he was entitled to a decree authorizing a redemption of the lands sold under the decree in favor of the drainage commissioner, and it was error to dismiss that part of his cross-bill that asked such relief. That question was depending in an original suit, commenced in the circuit court of Saline county, and, for anything that appears in the present record, may have long since been determined in that court. That case was before this court at a former term, when the judgment of the circuit court was reversed, and the cause remanded for further proceedings not inconsistent with the opinion of this court then announced. *Groves* v. *Maghee*, 72 Ill. 526. It may be presumed the mandate of this court has been obeyed, and whether it has or not, the cause still appears to be depending in that court which first acquired jurisdiction, and the rights of the parties litigant will not be considered as involved in this case.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

SHELDON, J., dissenting: Under our Recording act, I think that as respects the land of which Groves was not in possession, the assignment of the certificate of purchase to him should have been previously recorded, to make it valid as against the judgment.

MULKEY, J., took no part in the decision of this case.