# DECISIONS

OF THE

# Supreme Court of Florida

## JANUARY TERM, A. D. 1916.

L. C. Gracy, Margaret S. Gracy and H. F. Townsend, *Appellants*, v. Thomas W. Fielding, *Appellee*.

Opinion filed January 13, 1916.

1. The possession of one tenant in common of lands is *prima ̄facie* the possession of all the tenants holding in common, and the possession of one tenant does not become adverse to his co-tenants until the latter are actually ousted; or unless the possession of the one is exclusive of and openly hostile to his co-tenants and the character of such possession is brought home to his co-tenants by actual notice of such adverse holding; or that such possession is so open and notorious in its hostility to and exclusiveness of them as to put them on notice of its adverse character.

2. The purchaser of land at a sheriff's sale under an execution issued upon a judgment against one, acquires only just such interest in the land as the judgment debtor had. The rule of *caveat emptor* applies.

3. The sale of a tract of land under an execution based upon a judgment against one tenant in common does not of itself operate as an ouster of the other co-tenants.

4. Where the occupation of land by a person is as co-tenant with others his occupation of the land will be presumed to have continued as such.

5. In a suit for partition of lands brought by tenants out of possession against a co-tenant in actual possession, where the latter resists the partition upon the ground that he has acquired title to the land as against his co-tenants by adverse possession, it is incumbent upon him in his answer to clearly aver an open and manifest renunciation of the tenure of his co-tenants brought home to them by actual notice of the character of his possession or by such acts of ownership on his part as to charge them with notice of the hostility and exclusiveness of his possession, and that such possession has continued since the disseizin of his co-tenants for the statutory period necessary to ripen into title.

6. The disseizin of one tenant in common occurs when he has knowledge that his co-tenant has taken possession of the common property with the intention to hold it exclusively as his own, and has done some act evincing an intention to assert an adverse and hostile claim.

7. A suit for partition cannot be used as a substitute for the action of ejectment, nor for the sole purpose of testing the legal title to land, yet when a suit for partition is properly brought all controversies between the parties as to the legal title will be settled by the Chancellor under the statute. Secs. 1940-1946 Gen. Stats.

8. Constructive adverse possession of land against the true owner occurs only where actual possession of at least part of the tract has been taken under color of title.

Appeal from Circuit Court, Alachua County; J. T. Wills, Judge.

Order affirmed.

*Williams & Hardee,* for Appellants;

*W. S. Broome,* for Appellee.

ELLIS, J.—Thomas W. Fielding exhibited his bill of complaint in the Circuit Court for Alachua County against L. C. Gracy, Margaret S. Gracy and H. F. Townsend and prayed for a partition of certain lands in the bill described; an accounting from the defendant L. C. Gracy for timber, cross-ties and wood cut and removed from the lands by him; an injunction restraining him from cutting timber, cross-ties and wood from the lands; and that certain deeds to L. C. Gracy be cancelled and declared void as clouds upon the complainant's title.

The bill alleges in substance that Asbury T. Wideman in 1860 acquired by patent from the United States Government the west half of the northwest quarter and west half of the southwest quarter of section thirteen, and the east half of the northeast quarter and east half of the southeast quarter of section fourteen in township eight, range seventeen east, in Alachua County, Florida, and that he died seized and possessed of that land; that he left surviving him three children, John F., W. P., and Sallie Wideman; that the latter married W. P. Addison, who is now dead; that W. P. Wideman died leaving surviving him his widow Rebecca and three children, Clara, Jennie and Boyce Wideman; that in 1896 J. H. Jones recovered a judgment against J. F. Wideman and certain other parties, and that such other parties had no interest or title in the land described; that the sheriff of Alachua county in June, 1900, sold the said lands under that judgment and L. C. Gracy became the purchaser, who thereby acquired the undivided one-third interest of J. F. Wideman in the said lands; that Mrs. W. P. Addison, widow, Mrs. W. P. Wideman, widow, and her three children, Clara, Jennie and Boyce Wideman, conveyed by warranty deed to Thomas W. Fielding their

interest, title and claim to the lands, and in November, 1911, L. C. Gracy and wife conveyed by warranty deed to H. F. Townsend the west half of the southwest quarter, and the southwest quarter of the northwest quarter of section thirteen, township eight, range seventeen, but that by such deed Townsend only took the undivided one-third interest of Gracy in said land; that there appears upon the public records of Alachua county the record of a deed purporting to be signed by J. F. Wideman, W. P. Wideman, R. A. Wideman and S. W. Addison and others, but that the deed was never made, executed or delivered by any of the parties named in the bill, and the same is "false and forged;" that said deed was not acknowledged by any of the parties named in the bill, nor was it entitled to record, and the same is a cloud on the complainant's title; that there is also upon the records of Alachua county the record of a quit-claim deed from J. Hill Jones to L. C. Gracy purporting to convey the lands first described, but that such deed is void because Jones never owned the lands, nor was he authorized by the owners thereof to sell the same, and at the time the deed was executed the lands were the property of Mrs. W. P. Addison, Mrs. W. P. Wideman, Clara, Jennie and Boyce Wideman, and L. C. Gracy, who were tenants in common, and that the deed is a cloud upon the complainant's title; that there are also upon the public records of Alachua county the record of two quit-claim deeds to L. C. Gracy embracing the lands first described, one deed from Mrs. Fannie Bates and her husband B. H. Bates, John R. Lites and wife Annie Lites, Mrs. Annie Hoag Williams and her husband Hugh Williams, and the other from Mrs. J. D. Means and her husband J. D. Means, James R. Lites and wife Annie Lites, and Lou

H. Means; that said deeds are void and passed no title because the grantors therein named were not owners of the lands described, and that the complainant and defendants were tenants in common, but that the deeds constituted a cloud upon the complainant's title; that the lands are timbered lands, and that L. C. Gracy is cutting and removing the trees therefrom, and otherwise committing waste thereon and depreciating their value.

The defendants L. C. Gracy and wife, and H. F. Townsend answered the bill of complaint and, among other things, admitted that J. Hill Jones recovered a judgment in 1896 against J. F. Wideman and certain other parties who had no interest in the lands, but averred that such other parties to said judgment had interests in divers other lands which were sold by the sheriff as alleged.

The complainant filed an exception to that part of the answer containing the above averment as impertinent, and the exception was sustained.

The answer denies that the lands described in the bill are "wild, uncultivated, unoccupied and uninclosed," although there is no allegation in the bill that they are of that character, and then beginning at the seventh page and continuing through seventeen pages of typewritten matter avers in substance that the sheriff's deed to L. C. Gracy in 1900 referred to in the bill of complaint described other lands, as well as those described in the bill, namely, lands in sections 9, 10, 11, 13, 14, 15, 22, 23, 24, 26, 27 and 36, T. 8, S., R. 17 E., which together with the lands described in the bill were known as the "Bradley-Wideman Farm, or tract of land;" that upon the execution of the sheriff's deed Gracy immediately went into possession of the land, and that such possession was

"actual, peaceable, uninterrupted, undisputed, exclusive, open, visible, adverse and notorious," and that since December, 1900, he has personally given the greater part of his time to "developing, improving, farming and looking after said tract of land;" that he cut and removed from some of the land described in the bill, "old field pine saplings" preparatory to putting the lands into cultivation, built fences, used the wood obtained from the land for posts, likewise improved and utilized other lands embraced in the "Bradley-Wideman Farm," and generally exercised ownership and control of the entire tract. The answer also sets out in detail and with particularity many acts to show, as the answer averred, "exclusive, open, adverse" possession, by the defendant Gracy of the lands embraced in the "Bradley-Wideman Farm" other than those described in the bill, all of which acts were averred to be "under his own right as his sole property by virtue of his said sheriff's deed." These acts consisted, so the answer avers, in cutting cord wood, cross-ties, fence posts, logs for houses from, and sale of portions of the land, building houses and cultivating other portions of the tract, and payment of the taxes upon the lands. This part of the answer also denies that the complainant has any equitable interest in the lands described in the bill, and avers that the deed to the complainant was without consideration, and made merely for the purpose of enabling him as the attorney of the grantors named therein to bring the suit, all of which was in substance elsewhere averred in the answer. It was also averred that the proper parties had not been joined as complainants; that there should have been an action of ejectment at law in place of the bill for partition, and that complainant and his grantor were guilty of laches.

These averments, however, rested upon and were con-clusions of the pleader from the facts averred in other portions of the answer.

The answer also contained averments of facts as to how the debt from J. F. Wideman to J. Hill Jones arose which was finally merged in the judgment against J. F. Wideman and others, that Wideman was in fact the agent of the complainant's grantors when the debt to Jones was contracted.

The complainant filed an exception to all these aver-ments of the answer contained on pages thereof num-bered from seven to twenty-three inclusive, except the last two lines of page twenty-three, as impertinent, which exception was sustained.

From the order sustaining the exceptions as above recited this appeal is taken.

At the time J. Hill Jones obtained his judgment against John F. Wideman and others, it appears that Wideman was the owner of only an undivided one-third interest in the lands described in the bill of complaint; that the sheriff of Alachua county levied upon and sold under the judgment and execution obtained against Wideman and others, not only all the lands described in the bill, but about three thousand, nine hundred acres more. At the sale appellant became the purchaser, and the sheriff executed a deed to him, describing the lands by township and range, giving in detail the subdivisions of the sections conveyed. Thereupon according to that part of the answer to which exceptions were filed, appel-lant "personally went into the actual, peaceable, uninter-rupted, undisputed, exclusive, open, visible, adverse and notorious possession" of the entire tract which he de-scribed in the answer as the "Bradley-Wideman Farm,

or tract of land." This averment of the answer is not inconsistent with the idea that as to the three hundred and twenty acres of land described in the bill, the appellant's "actual, peaceable, undisputed, uninterrupted, open, visible, exclusive, adverse and notorious possession" was as co-tenant or tenant in common with complainant's grantors. For unless the sheriff's deed to L. C. Gracy operated as an ouster of complainant's grantors, they had a right to assume that the possession taken and held by him of the lands described in the bill was as co-tenant and not adverse to any of them. The possession of one tenant in common is prima facie presumed to be the possession of all, and such possession does not become adverse to the other co-tenants unless they are actually ousted, or unless the possession of the one is exclusive of and openly hostile to his co-tenants and the character of such possession is brought home to them by actual notice of such adverse holding, or that such possession is so open and notorious in its hostility to and exclusiveness of them as to put them on notice of its adverse character. See Union Consolidated Silver Mining Co. v. Taylor, 100 U. S. 37, 25 L. Ed. 541; Lessee of George Clymer v. Dawkins, 3 How. (U. S.) 674, 11 L. Ed. 778; Carpentier v. Mendenhall, 28 Cal. 484; Joyce v. Dyer, 189 Mass. 64, 75 N. E. Rep. 81; Russell v. Tennant, 63 W. Va. 623, 60 S. E. Rep. 609; Freeman on Co-tenancy, §§ 166-167; Ashford v. Ashford, 136 Ala. 631, 34 South. Rep. 10; Cramton v. Rutledge, 163 Ala. 649, 50 South. Rep. 900. See also Price v. McLeod, 67 Fla. 171, 64 South. Rep. 769; Stokely et al. v. Conner et al., 69 Fla. 412, 68 South. Rep. 452.

Now the rule of caveat emptor applies in sheriffs' sales. The purchaser at a sheriff's sale acquires only

just such interest as the debtor may have in the land. The creditor proposes to sell and the purchaser to buy only such interest as the debtor has. "The parties do not treat for a title." 3 Devlin on Deeds, § 1435; Wells v. Vandyke, 106 Pa. St. 111; Boro v. Harris, 13 Lea (Tenn.) 36; Miller v. Baker, 166 Pa. St. 414, 31 Atl. Rep. 121; Leport v. Todd, 32 N. J. L. 124; McLennan v. Graham, 106 Ga. 211, 32 S. E. Rep. 118; Maghee v. Robinson, 98 Ill. 458; Wright v. Tichenor, 104 Ind. 185, 3 N. E. Rep. 853. This was the holding of the court in Price v. McLeod, *supra,* in which case McLeod was the owner of an undivided one-fifth interest in the land claimed adversely to the other co-tenants by Price as purchaser of the entire tract at a sheriff's sale under an execution against McLeod.

The sheriff's deed to Gracy therefore was nothing more than a notice to the co-tenants of John F. Wideman that the latter's undivided interest was conveyed to Gracy, and did not of itself constitute an ouster of John F. Wideman's co-tenants. The sheriff having no authority to convey more than the undivided one-third interest of John F. Wideman in the lands described in the bill, the sale did not in law purport to convey the entire ownership, nor will the law presume that his co-tenants noticed or regarded it as more than the conveyance to Gracy of the undivided interest of Wideman. The transaction is unlike that in which a co-tenant undertakes by deed to convey to a purchaser the entire ownership of a tract of land in which the grantor owns only an undivided interest, which act asserting as it does the entire ownership is of such character as the law will presume to be noticed by persons of ordinary diligence in attend-

ing to their own interests. But in this case Gracy cannot claim that he was an innocent purchaser of the entire ownership, for elsewhere in his answer he admits that the interest of John F. Wideman in the lands was only that of "a one-third interest."

The occupation by Gracy of the land described in the bill having begun as that of a co-tenant, it will be presumed to have continued as such, and if he claims to the contrary it was incumbent upon him to aver in his answer an open and manifest renunciation of the tenure of his co-tenants brought home to them by actual notice of the character of his possession, or by such acts of ownership on his part as to charge them with notice of the exclusiveness and hostility of his possession as to them.

The cutting of "old field pine saplings" from the land which in the answer was averred to be uncultivated and unoccupied, the fencing of a portion of it, and the cultivation of the part under fence, the cutting of wood and cross-ties from it by Gracy, or persons to whom he gave permission to do so, were acts not incompatible with the incidents of occupation by Gracy as a co-tenant. It is the intention of the tenant to hold the common property in severalty and exclusively as his own coupled with some act evincing an intention to assert an adverse and hostile claim that constitutes the disseizin when such intention comes to the knowledge of his co-tenants. Justice v. Lawson, 46 West Va. 163, 33 S. E. Rep. 102; Reed v. Bachman, 61 West Va. 452, 57 S. E. Rep. 769; Pillow v. Southwest Virginia M. Co., 92 Va. 144, 23 S. E. Rep. 32.

The Supreme Court of Appeals of West Virginia speaking through Judge Brannon, in the case of Reed

v. Bachman, said: "No mere silent possession by one for any length of time will alone divest the right of a brother tenant; that brother tenant may be in any part of this earth distant from the land and he may repose in silence and confidence that his fellow's occupation will not destroy his right. He may assume this and sleep in composure. It is for the occupying tenant to let him know that he claims in hostility. The burden of showing this rests on him. Diligence is not required of the absent brother."

It is true the answer avers that complainant and the grantors of Thomas W. Fielding knew of L. C. Gracy "claiming all said lands adversely to all the world," but there is no averment as to when such knowledge came to them, and as the disseizin did not take place until they had such knowledge the averments of the answer do not show that the defendant's title had ripened into one by adverse possession for the statutory period of seven years. But the defendants insist that as they set up title by adverse possession, ejectment, and not a suit in equity for partition is the proper course. While it is true that a suit for partition cannot be used as a substitute for the action of ejectment, nor for the sole purpose of testing the legal title, yet when the case is one whose bona fide object is the partition of lands between common owners one or more of whom are complainants, and others are defendants, all controversies between them as to the legal title will be settled by the Chancellor under our statute. Secs. 1940-1946 Gen. Stats. of 1906; Camp Phosphate Co. v. Anderson, 48 Fla. 226, 37 South. Rep. 722; Williams v. Clyatt, 53 Fla. 987, 43 South. Rep. 441; Koon v. Koon, 55 Fla. 834, 46 South. Rep. 633; Dallan

v. Sanchez, 56 Fla. 779, 47 South. Rep. 871; Griffith v. Griffith, 59 Fla. 512, 52 South. Rep. 609; Christopher v. Mungen, 61 Fla. 513, 55 South. Rep. 273. The portion of the answer complained of in this case does nothing more than deny complainant's title. The averment that complainant and the grantors of Fielding knew that L. C. Gracy claimed the land adversely is not sufficient to show title in the defendant Gracy, and as one tenant in common out of possession may maintain his bill in equity for a partition of the lands against his cotenant who is in sole possession the averment was impertinent, because the actual possession of one co-tenant is the constructive possession of the other, and if the former desires to set up title in himself by. adverse possession against his co-tenant he must aver that since the ouster or disseizin of his co-tenant he has maintained against him open, notorious, continuous, adverse possession for the period of seven years.

The averments of the answer as to defendant's possession of lands other than those described in the bill, we think, were impertinent. There is no constructive adverse possession of land against the true owner without actual possession of at least part of his land. Haggart v. Ranney, 73 Ark, 344, 84 S. W. Rep. 703; St. Louis, I. M. & S. R. Co. v. Moore, 83 Ark. 377, 103 S. W. Rep. 1136. The sheriff's deed embraced a large tract ,of land, other than the three hundred and twenty acres described in the bill to which the complainant claims an undivided two-thirds interest, in this tract the complainant nor his grantors claimed any interest, nor did the co-defendants of John F. Wideman against whom the judgment was obtained claim any interest in the lands

described in the bill. The mere fact that the sheriff's deed embraced both tracts would afford no reason why complainant's grantors would be put on inquiry to ascertain whether Gracy who improved and cultivated portions of the large body of land was also claiming title to the lands described in the bill adversely to them.

"The doctrine that the actual possession of a part of the premises will be constructively extended to all the land described in the color of title relates only to an entire thing; that is the constructive possession can only extend to the whole of that which is partially occupied. It does not extend to other and distinct parcels, even though they are contiguous and were conveyed to the claimant by the same person and at the same time." 1 R. C. L. p. 729, Par. 45.

A grantor who includes land to which he had no title in a deed with that to which he has title, and the grantee enters upon that land to which the grantor has title, such occupancy does not operate as a disseizin of the owner of the other land described in the deed. Turner v. Stephenson, 72 Mich. 409, 40 N. W. Rep. 735, 2 L. R. A. 277; 3 Washburn on Real Property (5th ed.) Marg. P. 498; Thompson v. Burhans, 61 N. Y. 52. The case of Kendrick v. Latham, 25 Fla. 819, 6 South. Rep. 871, on the question of constructive possession by one claiming adversely, merely holds that there is nothing in the size of a "forty" acre tract, the quarter of a quarter section, to avoid the application of the doctrine.

There was no error in sustaining the exceptions to the answer, and the order of the Chancellor is affirmed.

TAYLOR, C. J., and SHACKLEFORD and WHITFIELD, JJ., concur.

COCKRELL, J., absent by reason of sickness.