IDA V. CARR AND HER HUSBAND, J. O. CARR, EFFIE
RAULERSON AND EMMA FEE AND HER HUSBAND,
FRED FEE, *Appellants*, v. THEODORE LESLEY, *Appellee*.

## Opinion Filed February 2, 1917.

1. While the findings of the Chancellor on the facts where the
evidence is heard by him, and the witnesses are before him,
are entitled to more weight in the Appellate Court than where
such findings are made in a cause where the testimony was not
taken before him, yet in either case the Chancellor's findings
should not be disturbed by an Appellate Court unless shown
clearly to be erroneous.

2. The possession of one tenant in common is *prima facie* the
possession of all, and one tenant in common cannot hold
possession adversely to his cotenant until he brings home to
his cotenant the knowledge that such possession is in hostility
to, and a denial of, the other's title, or that the character of
his possession in the qualities of openness, hostility to and
exclusiveness of his cotenant is such as to reasonably put
such cotenant on notice.

3. Where one acquires an interest in land from one of several
owners or tenants in common, he becomes tenant in common
with such others in place of his grantor.

4. Where an intended purchaser of lands owned by several per-
sons, agrees with one representing himself to be their agent,
to buy such lands and causes a deed to be prepared which
is to be executed by all the tenants in common, and pays
down the purchase money for the land to such pretended
agent who procures the signature of only one of the owners
to such deed and notifies the purchaser that the others refuse
to sign, such purchaser does not acquire by such transaction
the entire interest in the land.

Appeal from Circuit Court for Hillsborough County;
F. M. Robles, Judge.

Decree reversed.

*C. C. Morgan,* for Appellants;

*H. S. Phillips,* for Appellee.

PER CURIAM.—Theodore Lesley in January, 1915, filed his bill in the Circuit Court for Hillsborough County against the appellants, alleging that he was the owner of a certain tract of ten acres of land in Hillsborough County, which was described; that in April, 1901, his father, Captain John T. Lesley, as agent for the complainant purchased the land from E. O. Morgan paying him therefor the sum of four hundred dollars; that in making the sale E. O. Morgan acted as agent for the appellants, and promised to have them execute a deed of conveyance to the land and deliver the same to the complainant; that complainant took possession of the lands in April, 1901, enclosed the tract with a substantial fence and used the land for years as a pasture, and maintained the fence in good condition; that he has held himself out as the owner of the property continuously ever since, and claimed it adversely to all, alleging that his possession had ripened into title by adverse possession. The complainant alleged in the bill that the defendants, who are the appellants here, had some claim upon the land "the extent of which" was alleged to be unknown, but that the same was a cloud upon his title. The prayer was that complainant's title to the land be quieted, that defendants be required to execute a deed conveying the lands to complainant, or in default thereof, that complainant be declared to have the title to the lands, and for general relief.

A demurrer to the bill was interposed in behalf of Mrs. Carr, which was overruled, and she filed a sworn

answer denying the material allegations of the bill.   The
other two defendants also answered the bill, but not under
oath.   The complainant filed a general replication and the
cause came on to be heard upon the pleadings and testi-
mony.

. The Chancellor decreed the title to be in complainant,
·that the defendants be barred and precluded from any
right or title or interest in the property. This decree rested
upon the finding by the Chancellor that complainant had
acquired title to the property described in the bill by ad-
verse possession, under the provisions of Section 1722
General Statutes of Florida, 1906.

Within five days after this decree was rendered, the
defendants below filed their petition for a rehearing upon
the ground that the testimony failed to show such posses-
sion of the premises by the complainant as was sufficient
to ripen into title by adverse possession, because the com-
plainant and the defendants were shown by the testimony
to own the property jointly between them.   In substance,
that the property was owned in common by the complain-
ant and defendants, and the testimony failed to show an
ouster by complainant of his co-tenants.   The petition
was overruled and an appeal taken from the final decree
and the order overruling the petition for rehearing.

We have arrived at the conclusion that the decree was
· erroneous, and the petition for a rehearing should not
have been denied.   We are mindful of what this court
has said in many cases to the effect that the findings of
the Chancellor on questions of fact should not be reversed
unless the evidence clearly shows that in such findings the
Chancellor erred.   See Mock v. Thompson, 58 Fla. 477,
50 South.   Rep. 673; Lucas v. Wade, 43 Fla. 419, 31
South. Rep. 231; Sarasota Ice, Fish & Power Co. v.
Lyle & Co., 58 Fla. 517, 50 South. Rep. 993   But these

cases make a distinction between the conclusions and findings of a Chancellor where the testimony is not taken before him and where it is, holding that in the former case the findings are not entitled to the same weight as they are in the latter. Nevertheless this court holds that in either case the findings of the Chancellor will not be disturbed by an appellate court unless they are shown clearly to be erroneous.

We think that the facts in this case show that Mr. Theodore Lesley's possession of the land described was that of a cotenant with the complainants; that when the negotiations for the purchase of the land were being carried on by Captain J. T. Lesley, the complainant's father, acting as complainant's agent, and the father of the defendants, Mr. E. O. Morgan, Captain Lesley knew that the title to the land was in the four daughters of Mr. Morgan. Mr. Morgan and Captain Lesley had some business dealings together which involved the handling of cattle and the use of the land in dispute, and some lands adjacent thereto, as a pasture for their cattle. The pasture was surrounded by a substantial enclosure, which took in the particular ten acres in dispute. Mrs. Lizzie Jackson owned this ten acre tract and complained to Mr. Morgan and Captain Lesley about putting a fence on her lands. She instituted suit against them for damages. They both called upon her, settled their difficulties by agreeing to purchase the land from Mrs. Jackson. Captain Lesley himself writing to her and instructing that the deed be made to the four daughters of Mr. Morgan. The deed was executed according to those instructions on August 24, 1900. The grantees named were Jennie K. Lesley, Emma Morgan, F. H. Alderman and Ida V. Carr, the four daughters of E. O. Morgan—Mrs. Jennie K. Lesley being the wife of E. L. Lesley, a son of Captain J.

T. Lesley and brother to complainant. Now in 1901, Captain Lesley desiring to purchase the land, requested his son E. L. Lesley to ascertain from Mr. Morgan if he would sell and at what price. Mr. Morgan said he would take five hundred dollars for it, one hundred of which Mr. E. L. Lesley might retain. So Mr. Lesley wrote to his father what Mr. Morgan had said, and that if the Captain would deposit four hundred dollars in a bank in Tampa to Mr. Morgan's credit, E. L. Lesley would release his claim to the one hundred dollars. This was done and a deed was thereupon drawn to be signed by the four daughters of Mr. Morgan named as the grantees in the deed from Mrs. Jackson. This deed which was to have been executed by the four daughters, named Theodore Lesley as grantee. Mr. Morgan told Mr. E. L. Lesley, who was acting for his father, that the daughters would not sign the deed; "that he could not do anything with the girls; could not make them sign the deed." For several years, according to the testimony of the complainant, he has had a quit-claim deed to the land from his brother and the latter's wife who was one of the grantees in the deed from Mrs. Jackson. In the testimony of Mr. E. L. Lesley, the following questions were propounded, and answers given: Q. "Was it your understanding that your father, Captain Lesley, bought this property, that he bought it for Theodore Lesley?" A. "The deed was made to Theodore Lesley." Q. "Theodore Lesley your brother?" A. "Yes." Q. "You say that the deed which was sent to you and which you and your *father* signed conveyed the property to Theodore Lesley?" A. "Yes sir." Q. "Did you ever have any conversation with Mr. Morgan about it, after you found out the deed had not been signed?" A. "I was down at his place sometime after my father wrote me and asked me about the deed, and I

asked Mr. Morgan if the deed had ever been signed and returned; he said the girls would not sign it, but if he could ever get them all together and get Ida V. Carr over 'there he would get them to sign it." This testimony shows that the deed which was prepared and sent to E. L. Lesley, was intended to be executed by the four daughters, one of whom was E. L. Lesley's wife. It seems that he and his wife signed. The word *"father"* is evidently a misprint, as Captain Lesley was not a party to the deed. However it is perfectly clear from the testimony, as well as the allegations of the bill, that the complainant took possession of the property after the negotiations with E. O. Morgan and a knowledge that it was held in common by the latter's four daughters. A one-fourth interest was actually acquired by the complainant either in 1901, when his father sent the deed to E. L. Lesley to be executed by him and his wife and the other three daughters of E. O. Morgan, or afterwards when the quit-claim was obtained. There is nothing whatever in the evidence to show that the complainant's possession was actually hostile to the defendants; in fact, he had no other purpose seemingly than to claim title under them, and not in hostility to them.

This court has many times said in discussing the law of adverse possession as applied to one who claims title against a cotenant, that "the possession of one tenant in common is prima facie presumed to be the possession of all, and such possession does not become adverse to the other cotenants unless they are actually ousted, or unless the possession of the one is exclusive of and openly hostile to his cotenant, and the character of such possession is brought home to them by actual notice of such adverse holding, or that such possession is so open and notorious in its hostility to, and exclusiveness of, them as to put

them on notice of its adverse character." See Gracy v. Fielding, 71 Fla. 1, 70 South. Rep. 625. See also Anderson v. Northrop, 30 Fla. 612, 12 South. Rep. 318. The evidence shows that the complainant knew the address or place of residence of his contenants; they lived within the State in cities not far distant, and yet he did not attempt to bring to them actual notice of his adverse claim or possession, if indeed his possession was adverse in fact. So far as they knew he was merely using the place for the purpose to which it had been used when their father and complainant's father were in business together, that the taxes were paid by him as compensation for such use. The evidence does not show that there had been brought home to them a knowledge that complainant claimed the land in open hostility to their title seven years before the institution of the suit.

We think, therefore, that the decree should be reversed and the bill dismissed, and it is so ordered.

BROWNE, C. J., and TAYLOR, SHACKLEFORD, WHITFIELD and ELLIS, JJ., concur.