STURGIS, Judge.
This is an appeal from a final decree of partition which also denied the claim of one of the parties to an exclusive interest in part of the subject property.
W. A. Vaughn, being the head of a family and owner of certain acreage constituting the homestead, died intestate on February 9, 1934, leaving his widow and lineal descendants as heirs at law. Subsequent to his widow’s death, certain of his lineal descendants, including the ap-pellees, sued the other lineal descendants, including the appellant, Azzie Vaughn, also known as Asa Lee Vaughn, one of his children, for partition of the homestead property. Azzie filed answer and counterclaim alleging exclusive title to a part of the subject property based (1) on an in *393 strument in writing dated June 21, 1927, and (2) on adverse possession said to have commenced on June 21, 1927. The written document reads:
“This is to certify that we give Asa Lee Vaughn the said land to witt (sic) SO acres in sec. 13. Townshipt (sic) 17. Range 17. [here follows an unintelligible symbol] and is all I own in sec. 13. on this day of June 21, 1927.
“sinud (sic)
“W. A. Waughn
“Floria Vaughn
“A. L. Barrlow
“J. J. Vinzant.”
Upon the evidence presented before the chancellor a final decree was entered finding and holding: (1) that the subject property was the homestead of W. A. Vaughn at the time of his death; (2) that his children thereupon became vested with fee simple title subject to a life estate in his widow; (3) that the above mentioned paper writing was admitted in evidence by virtue of testimony exclusive of the testimony of the appellant, Azzie Vaughn, the party in interest; (4) that at the time of W. A. Vaughn’s death appellant had adversely used and occupied the 50 acre tract referred to in said writing for a period falling four months and twelve days short of the period necessary to ripen the same into title; (5) that after W. A. Vaughn’s death appellant’s possession of said 50 acre tract was adverse only to the life estate of his mother; the widow of W. A. Vaughn; and (6)
“As to the other heirs who have become his co-tenants, Azzie Vaughn’s possession was not adverse because he failed to clearly bring home to them that he was claiming said 50 acre tract adversely to their interest.”
It was thereupon decreed that the appellant was entitled to share in the property involved in this suit only as one of the heirs of W. A. Vaughn, deceased, and the property was partitioned accordingly. This appeal challenges that disposition.
Section 731.27, Florida Statutes, F. S.A., provides:
“The homestead shall descend as other property; provided, however, that if the decedent is survived by a widow and lineal descendants, the widow shall take a life estate in the homestead, with vested remainder to the lineal descendants in being at the time of the death of the decedent.”
The critical question for determination is whether, in the light of that statute and the applicable law, the appellant, who had admittedly entered into and maintained adverse possession of a part of the homestead of his deceased father for the last 6 years, 7 months and 18 days of his father’s life, and thereafter maintained the same against the life estate of his father’s widow, is entitled, as against the other lineal descendants of his father, to calculate and tack on to the period of adverse possession transpiring prior to the death of his father any period of use, occupancy and possession transpiring subsequent to such death, without first making it clearly known to his fellow remaindermen that he claims adversely to them. We agree with the chancellor’s conclusion that such notice is necessary.
There is competent authority for the proposition that adverse possession may run against a remainderman “before the life estate falls in” where knowledge is brought home to the remainderman of the adverse claim of title. Commerce Bldg. Co. v. Parslow, 1927, 93 Fla. 143, 112 So. 378; Mullan v. Bank of Pasco County, 1931, 101 Fla. 1097, 133 So. 323; Wagner v. Moseley, Fla.App.1958, 104 So.2d 86. And where no fiduciary relation exists the statute governing title by adverse possession will not be interrupted by death of the prior title claimant. However, where a fiduciary relation does exist, as is the case here between lineal descendants who *394 by operation of law become prima facie jointly vested with title as remaindermen of property that constituted the homestead, the key to the situation always depends on whether the remainderman claiming' adversely to his fellow remaindermen has clearly brought home to the latter the fact that he asserts such adverse attitude against what would ordinarily be their common interest.
In their relations with each other concerning their respective interests in property given to them together, remain-dermen are governed by the principles of law governing the respective rights, duties, and liabilities of cotenants generally. The community of interest arising from their co-ownership creates a peculiar relationship of mutual trust and confidence as to the common estate. Arising therefrom are numerous presumptions of the utmost favor to the joint owners designed to insure that the title and rights of each shall be preserved unimpaired, at least to the extent that absent clear notice no direct or indirect assault on the interest of any one owner shall be made by any other.
In Gracy v. Fielding, 1916, 71 Fla. 1, 70 So. 625, our Supreme Court held that the possession of one tenant in common is prima facie presumed to be the possession of all, and such possession does not become adverse to the other cotenants, unless they are actually ousted, or unless the possession of the one is exclusive of and openly hostile to his cotenants, and the character of such possession is brought home to them by actual notice of such adverse holding, or that such possession is so open and notorious in its hostility to and exclusiveness of them as to put them on notice of its adverse character.
The case of Futch v. Parslow, 1912, 64 Fla. 279, 60 So. 343, cited by appellant, is not in point for the reason that the title claimant, Parslow, did not stand in the relation of a cotenant with the plaintiff. As we interpret that decision, affirmance of a final decree quieting title in Parslow rested on two controlling propositions: first, that there was ample evidence from which the chancellor could find that Par-slow, a stranger to one John Carney through whom one of the defendants claimed as a son and heir, took actual possession of the subject property and claimed it adversely before the death of said John Carney; second, that the chancellor was justified in finding from the evidence that Parslow, a stranger to one Mrs. Futch, also a party defendant, held adversely to Mrs. Futch for the required statutory period, and that she was not misled or deceived into failing to assert her rights before they were barred by the lapse of the statutory period, and that no countervailing equity appeared in her behalf.
Robinson v. Herrman, 1931, 101 Fla. 865, 132 So. 827, 828, also relied on by appellant, is distinguishable from the case on appeal in that the title claimant there, as in Futch v. Parslow, supra, was a stranger to the plaintiffs, who sued to partition the subject property. The appellee there, Herrman, also claimed under a duly recorded deed of conveyance. In affirming a decree in favor of the adverse claimant, Herrman, our Supreme Court said:
“The evidence is sufficient to show a continuous adverse possession from September, 1907, to October, 1916, under color of title, and that such possession was so open and notorious in its hostility to, and exclusiveness of, those claiming to be cotenants as to put them on notice of its adverse character, and therein complies with the rule as enunciated by this court in Gracy v. Fielding, 71 Fla. 1, 70 So. 625 * * *.
"The bill in this case was filed on the 3d day of April, 1928. The deed from Greenwood to Galt was made February 18, 1907, more than twenty years prior to the institution of the suit. Therefore, the provisions of chapter 10168, Acts of 1925, section 4659, C.G.L.1927 [F.S.A. § 95.22], op *395 erate as bar to the recovery by the complainants.”
Appellant’s competent brief also relies on Restatement of the Law, Property, Vol. II, Sec. 226, page 925, wherein it is stated:
“Where the period of the statute of limitations or the period of prescription has commenced to run against the owner of an estate in land who thereafter transfers all or part of his ownership in such a way as to create a future interest therein, such period is computed against the owner of the future interest so created in the same manner as it would have been computed against the transferor had there been no transfer.”
Bare analysis of this citation reflects that it is not in point because it does not involve rights between remaindermen.
Appellant also argues that the life estate of the widow operates to preclude the relationship ■ of remaindermen as between the parties to this cause, pointing out the absence of unity of possession and citing Andrews v. Andrews, 1945, 155 Fla. 654, 21 So.2d 205, and Tresher v. McElroy, 1925, 90 Fla. 372, 106 So. 79, in support of that contention. While in a technical sense the argument is sound, the proposition so advanced will not be accepted to override the equitable principles governing the fiduciary relation that exists between parties standing substantially in the position of cotenants, especially in view of F.S. § 731.27, F.S.A. which operates to create a vested interest in remaindermen notwithstanding the intervening life estate.
For a general discussion of the problem with which we are concerned see Boyer’s Florida Real Estate Transactions, Sec. 29.-20; 8 U.FlaX.Rev. 373-379; Powell on Real Property, Sec. 301.
Recognizing and extending the rule laid down by the Florida Supreme Court in Fairlie v. Scott, 1924, 88 Fla. 229, 102 So. 247, we hold that it is only when there is clear proof of actual knowledge brought home to a reversioner or a remainderman of abandonment by another reversioner or remainderman of his common estafe in the property and the acquisition and assertion by him of a different title hostile to that of his fellow reversioner or remainderman, that the statute of limitations may operate to divest title of the reversioner or re-mainderman and vest title in such adverse claimant.
The appellant having failed to clearly demonstrate error, the final decree must be and it is
Affirmed.
WIGGINTON, Chief Judge, and LEWIS, E. CLAY, Jr., Associate Judge, concur.